(No. 40134.—

ROCK ROAD CONSTRUCTION COMPANY, Appellant, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(EDITH SORRENTINO, Appellee.) ·

*Opinion filed March 29, 1967.*

HACKBERT, ROOKS, PITTS, FULLAGAR AND POUST, of Chicago, (DOUGLAS F. STEVENSON, DANIEL P. SOCHA, and STEPHEN L. SWARD, of counsel,) for appellant.

RALPH T. CARROLL, of Chicago, for appellee.

Mr. JUSTICE UNDERWOOD delivered the opinion of the court:

This appeal raises the recurring problem of the compensability of a fatal heart attack under the Illinois Workmen's Compensation Act. The arbitrator, Industrial Commission

and circuit court of Cook County all agreed that the heart attack here involved was causally connected with the decedent's work and awarded compensation.

Between 1:00 and 1:30 P.M. on October 9, 1962, the decedent, Frank T. Sorrentino, an asphalt truck driver for the Rock Road Construction Company, was found dead in the truck which he was driving after it apparently went out of control, lightly struck a guard rail and came to rest. At the time of his death, decedent was 53 years old, was five feet nine inches in height and weighed about 170 pounds. He appeared physically normal when he went to work on the day of his death. His job duties included picking up a load of hot asphalt, rolling a tarpaulin over it to keep it warm, driving to a job site, dumping the load, rolling up the tarpaulin, and then repeating the process. It is the exertion connected with this activity, after the decedent had dumped his second load of the day at the then current job site, that is claimed to be causally related to the heart attack which occurred during his return trip to the employer's plant. In rolling up the tarpaulin, which weighed 40 pounds, the decedent had to untie it, get on the running board of the truck, pull himself up on a 4 to 5-inch wide "rub rail" by placing one foot on it and taking hold of a hand grip, and, while balancing himself by holding the top board of the truck with one hand, walk the 11-foot length of the truck along the rub rail and then walk back rolling up the tarpaulin. The distance between the ground and running board is 1½ to 2 feet; the rub rail is around 50 inches from the ground. The hand grip is about 6 feet and the top of the truck approximately 8 feet above the ground.

The decedent's cause of death was listed as acute coronary thrombosis (myocardial infarction) resulting from arteriosclerotic heart disease (coronary occlusion). He had suffered two previous myocardial infarctions, one in 1958 and the other in 1960, each involving some 3 weeks hospitalization, was seeing his family doctor every two weeks,

carried nitroglycerin pills at all times and did not go to work for about 3 months in each of the two winters preceding his death because the cold weather bothered him. There had been two related periods of hospitalization, one in 1959 resulting from chest pains following an auto accident, and the other in 1961 for 8 days, the cause of which is not entirely clear but during which medication designed to stimulate circulation to the heart muscle was apparently given. His family doctor had told him that he should not be engaged in the kind of work he did because it was too strenuous for a man who had suffered a myocardial infarction. Carl Dinga, decedent's supervisor, testified that he knew decedent had a heart condition.

Four medical witnesses testified, one for the claimant and three for the employer. Claimant's expert expressed the opinion that the decedent's duties in connection with climbing upon the truck and rolling the tarpaulin up and down on October 9 were sufficient to precipitate his fatal heart attack. He said that the condition within the decedent's body had so changed that the work which he did on October 9, which might have been ordinary work on other days "was sufficient to precipitate an occlusion of that narrowed coronary blood vessel." The employer's experts were in agreement that the exertion involved here was not causally related to the occlusion, but differed in their explanations of the reasons for their opinions. The first said that there is no evidence that there is a causal relationship between exertion and a spontaneous coronary occlusion and that decedent's condition would continue to deteriorate irrespective of exertion. The second felt that death was inevitable in decedent's case regardless of what he did. On cross-examination he conceded that the greater the extent to which heart disease of this type has progressed, the less the strain necessary to produce acute coronary occlusion. However, he believed the strain involved in working with the tarpaulin was not sufficient to have been a precipitating

cause. The third voiced the opinion that exertion which is normal for the individual involved cannot be said to cause heart attacks of the type involved here.

In *Republic Steel Corp.* v. *Industrial Com.* 26 Ill.2d 32, 45, we laid down the controlling principle for heart-attack cases: "We have not heretofore held, and do not now hold that because a heart attack occurs at work, it is automatically compensable. To come within the statute the employee must prove that some act or phase of the employment was a causative factor in the ensuing injury. He need not prove it was the sole causative factor nor even that it was the principal causative factor, but only that it was *a* causative factor in the resulting injury. In the absence of such proof, the injury is not compensable."

This standard is limited by the rule that, where one's heart has deteriorated to such an extent that any exertion becomes an over-exertion, it is not sufficient to merely show that the employee has engaged in some job-connected physical activity prior to his attack. *Illinois Bell Telephone Co.* v. *Industrial Com.* 35 Ill.2d 474, 477. See also *National Malleable & Steel Castings Co.* v. *Industrial Com.* 32 Ill.2d 184.

From the record in the instant case, it is apparent that the decedent died during the return trip to his employer's plant shortly after dumping his second load of asphalt. From the description of this physical activity, it cannot be said that he did not substantially exert himself in so doing. Whether such activity was a causative factor in decedent's death is the subject of disagreement among the medical experts. Appellant argues the testimony of claimant's doctor is valueless, considering the fact that, in explaining what he meant when he said that the rolling up and down of the tarpaulin was a precipitating cause of the decedent's fatal occlusion, the claimant's expert said that the decedent's condition had so changed on October 9, 1962, that this task, which might have been ordinary on other

days, suddenly became sufficient to precipitate his death. We cannot agree with this conclusion for, as discussed below, the normality of the activity involved for the victim of a heart attack is not the controlling factor in these cases. Nor should the fact that the decedent had a heart condition prior to his fatal attack preclude recovery when the standard of *Republic Steel* is met. (*Clifford-Jacobs Forging Co.* v. *Industrial Com.* 19 Ill.2d 236, 244.) While the other three experts denied causation, each gave a different explanation for his opinion. Faced with this conflicting expert testimony, it was permissible for the commission to find that the necessary causal relationship was present. *Douglass and Co.* v. *Industrial Com.* 35 Ill.2d 100, 105. *Cf. Osco Drug, Inc.* v. *Industrial Com.* 36 Ill.2d 361.

It seems likely from this record that the ultimate result of decedent's heart condition would have been death at some indeterminate future date. It is, of course, possible that this could have occurred in a situation wholly unrelated to work or exertion. But neither of these circumstances necessarily renders an award of compensation against the manifest weight of the evidence (*Clifford-Jacobs Forging Co.* v. *Industrial Com.* 19 Ill.2d 236, *Gould National Batteries, Inc.,* v. *Industrial Com.* 34 Ill.2d 151, 158) if it may be legitimately inferred from the evidence before the commission that occupational activity or exertion was in fact a causative factor in hastening decedent's death. (*Republic Steel Corp.* v. *Industrial Com.* 26 Il.2d 32; Larson, Workmen's Compensation Law, par. 12.20). Whether decedent's condition had progressed to the point where any exertion became an over-exertion, and the death thus noncompensable (*Illinois Bell*) was for the commission's determination. The only evidence to this effect is the doubtful inference to be drawn from the disputed and conflicting testimony of the employer's medical witnesses. Moreover, the fact that decedent's personal physician advised him that he should not be engaged in the work he did because it was too strenuous

points to the opposite conclusion, *i.e.*, that less strenuous work would not have been harmful. Under these circumstances the finding of the Industrial Commission is not against the manifest weight of the evidence. *Gould National Batteries, Inc.* v. *Industrial Com.* 34 Ill.2d 151; *Bruno* v. *Industrial Com.* 31 Ill.2d 447, 448-9.

Appellant suggests that we should take this opportunity to establish a rule that activity which is usual and customary for the individual involved is not to be considered causally connected with a heart attack, but that unusual and different activity would render the injury compensable. Almost two-thirds of the jurisdictions which have considered this question hold that usual exertion may be causally connected with heart attacks (Larson, Workmen's Compensation Law, par. 38.30). We agree. The rule appellant promotes is inconsistent with our decisions (see, *e.g., Gould; Bruno*) and would operate to preclude recovery in nearly all heart cases, even where the great exertion involved in an employee's normal tasks leaves little doubt as to causation. Moreover, it would be incongruous to adopt a rule which would automatically allow compensation for a heart attack which follows a slight but unusual exertion and deny it for strenuous but usual exertion. While perhaps more difficult in application, the rule of *Illinois Bell Telephone Co.* v. *Industrial Com.* 35 Il.2d 474, 477, is, in our judgment, more sound.

We now turn to appellant's final contention: that decedent voluntarily increased the risk of suffering a third heart attack by returning to work after his second, contrary to doctor's advice, thus taking him outside the coverage of the Workmen's Compensation Act. In considering this argument, we start from the premise, not heretofore articulated by this court, but ofttimes stated in other jurisdictions, that an employer is presumed to take an employee as he finds him and thus assumes the risk attendant upon the hiring of an infirm employee (Larson, Workmen's Compen-

sation Law, par. 12.20, and cases therein cited; McNiece, Heart Disease and the Law, chap. 11, pp. 57-58), a presumption which makes it advisable for an employer to determine the state of an employee's health at the time of hiring. An exception to this rule has been established in a few jurisdictions to the effect that, if an employee fraudulently represents his condition to his employer, and there is a causal relationship between an injury incurred and the misrepresentation, the injury may not be compensable. *Air Mod Corp.* v. *Newton,* 215 A.2d 434 (Del.) ; *Martin Co.* v. *Carpenter,* 132 S.2d 400 (Fla.). *Cf. H. J. Jeffries Truck Line* v. *Grisham,* 397 P.2d 637 (Okla.) ; *Volunters of America of Madison* v. *Industrial Com.,* 30 Wis.2d 607, 141 N.W.2d 890.

As applied to this case, we believe that these rules and their logical extension are incompatible with appellant's contention. Appellant is charged with knowledge that decedent had a heart condition by virtue of the admitted awareness of decedent's supervisor. Moreover, it is also charged with knowledge that decedent suffered two previous myocardial infarctions, involving a total of six weeks hospitalization, and that he did not go to work for approximately 3 months during the two winters which immediately preceded his death, because it is clearly inferrable from the record that these events occurred while he was in its employ. This knowledge made it incumbent upon appellant to inquire into any job limitations placed on decedent by his doctor, and, in the absence of false representations made in response to such inquiry, it cannot avoid liability for this death which the commission could properly find to be causally related to decedent's employment.

The judgment of the circuit court of Cook County is affirmed.

*Judgment affirmed.*