JAY CECIL HARTSFIELD, Appellant, v. THE INDUSTRIAL COMMIS-
SION *et al.* (Humko, Division of Kraft, Appellee).

Fourth District (Industrial Commission Division)   No. 4—92—0142WC

Opinion filed March 4, 1993.—Rehearing denied April 23, 1993.

Champaign-Urbana Legal Clinic, P.C., of Champaign (Bernard A. Puglisi, of counsel), for appellant.

Joseph V. Dowd, of Dowd & Dowd, Ltd., of Chicago (Michael G. Patrizio, of counsel), for appellee.

JUSTICE STOUDER delivered the opinion of the court:

The appellant, Jay Cecil Hartsfield (the claimant), filed four applications for adjustment of claim pursuant to the Workers' Compensation Act (the Act) (Ill. Rev. Stat. 1991, ch. 48, par. 138.1 *et seq.*), contending that on four separate occasions he sustained a myocardial infarction in the course of and arising out of his employment with the appellee, Humko, Division of Kraft (the employer). Following a hearing, the arbitrator denied compensation. The Industrial Commission (the Commission) affirmed the arbitrator's decision, finding that the claimant had failed to prove accidental injuries arising out of and in the course of his employment. The circuit court confirmed the Commission's decision, and the claimant appealed to this court.

At the time of the alleged injuries, the claimant was 47 years old and was employed as a gas plant operator. The claimant's job required him to operate and monitor the employer's hydrogen and nitrogen production plants. Specifically, the claimant's duties included mon-

itoring a panel board and water towers, controlling water quality and keeping his area clean. The claimant had to physically check the temperatures in the furnaces and had to climb on vessels in order to change valves. The claimant was also required to observe the panel board to avoid an emergency condition in the plant. The claimant testified that if an emergency occurred and he did not take corrective action, there could be an explosion. If corrective action was required, it was performed from the panel board or by crawling out on top of the unit and making an adjustment there. The claimant's shifts lasted eight hours. During a normal shift, the claimant had to climb three flights of stairs on one side of the plant and two flights on the other side. The claimant did this four or five times during his shift. Sometimes the claimant had a helper who assisted with these duties.

The claimant testified that in early May 1980, he experienced pain in the back of his right arm, just above the elbow. Sometime during the first two weeks of May, the claimant rolled 55-gallon barrels, some of which weighed over 400 pounds. The claimant moved them with a two-wheeled dolly by tipping them up. The claimant also experienced pain in his arm when tightening a large union on a pipe. The claimant testified that "from time to time" he told his foreman, Terry Clark, and his helper, Kenneth Linck, about his pain. The claimant sought no medical attention for the pain he experienced in May 1980.

On July 30, 1980, the claimant suffered a myocardial infarction while vacationing in Florida. The hospital records from Memorial Hospital in Sarasota, Florida, indicate that the claimant had been suffering from angina-like pain over the past two weeks. The records state that it is possible that the claimant had suffered a previous myocardial infarction. During the claimant's hospitalization in Florida, his son went to the employer's insurance office to obtain insurance forms. When the claimant submitted the insurance forms, he marked the box for "illness" rather than "work injury."

Upon returning to Illinois, the claimant came under the care of Dr. Aldred Heckman. On October, 30, 1980, the claimant entered Burnham City Hospital and was diagnosed as having anterior sclerotic heart disease. The claimant underwent a heart catheterization, and it was discovered that he was suffering from a completely blocked left anterior descending coronary artery. The claimant was released from Burnham City Hospital on November 1. Dr. Heckman released the claimant to return to work on November 17, and advised him to begin slowly and then gradually increase his work load.

On November 14, 1980, the claimant was examined by Dr. Gerald Lietz, the company doctor. Dr. Lietz checked the claimant's blood

pressure, listened to his heart, and reviewed Dr. Heckman's certificate. Dr. Lietz did not find any obvious heart disease, but did not conduct any significant tests or ask about the claimant's working conditions. Dr. Lietz did not put any restrictions on the claimant's work.

On December 12, 1980, the claimant experienced chest and neck pain as he was leaving the plant. That day, the claimant had to take corrective action at the plant when the boiler room cut off the makeup water to a new boiler. This caused a shutdown of the whole plant on the hydrogen side. The claimant's corrective action consisted of using a pipe wrench and large handwheels on valves. Late in the afternoon, the claimant had to move oil barrels weighing between 200 and 250 pounds. When the claimant experienced pain, he went to the lunchroom and took nitroglycerine tablets and rested for about 20 minutes. By the time the claimant arrived home, he had taken between six and eight of the nitroglycerine tablets. The claimant's wife took him to Mercy Hospital that evening. Dr. Heckman examined the claimant during his hospitalization and found his physical condition to be unchanged. Dr. Heckman released the claimant to return to work on December 14, 1980.

On December 18, 1980, the claimant experienced pain in his arm and shoulder as he was getting ready to leave work. During that day, the claimant had to do an inventory run. This required the claimant to move 40 to 45 drums so that he could read their labels. When the claimant experienced the pain, he took two nitroglycerine tablets. The claimant's wife took him to Mercy Hospital, where he was hospitalized until December 23. The claimant has not worked since then. Dr. Heckman saw the claimant at the hospital and believed that the claimant had suffered a subendocardial heart attack.

The deposition of Dr. Heckman was taken on January 14, 1985. Dr. Heckman found that the claimant had suffered a myocardial infarction on July 30, 1980, while vacationing in Florida. Dr. Heckman found that the claimant had a total occlusion of the left anterior descending artery beginning at its origin. Dr. Heckman found the claimant's condition unchanged on December 13, 1980. Dr. Heckman was not in total agreement with the claimant's decision to return to work. On December 19, Dr. Heckman again examined the claimant and believed that he had suffered a slight heart attack. In response to a lengthy hypothetical question that referred to the events of December 18 and the claimant's physical condition, and assumed such things as that the claimant was following a low-fat, low-cholesterol diet, Dr. Heckman opined that there was a correlation between the hypothetical events and the claimant's alleged myocardial infarction of Decem-

ber 18. Dr. Heckman also stated that claimant's heart attack on December 18 could have occurred without any exertion on the claimant's part. Dr. Heckman had previously stated in a letter on February 28, 1983, that in his opinion, the claimant's coronary artery disease was not related to his employment.

Dr. Nathaniel Greenberg also testified for the claimant. Dr. Greenberg examined the claimant on May 29, 1984. In Dr. Greenberg's opinion, the claimant did not have a heart attack prior to July 30, 1980, nor did the claimant have a heart attack on December 12, 1980. Dr. Greenberg did believe that the claimant suffered myocardial infarctions on both July 30 and December 18. In response to a hypothetical question describing the events of December 18, Dr. Greenberg opined that the claimant's work caused his alleged myocardial infarction.

Dr. William Brice Buckingham testified for the employer. Dr. Buckingham examined the claimant at the employer's request on April 13, 1983. In Dr. Buckingham's opinion, the only myocardial infarction the claimant suffered was on July 30, 1980, while on vacation in Florida. Dr. Buckingham believed that on December 18, the claimant was suffering from ischemia (an inadequate blood supply) rather than another myocardial infarction.

The arbitrator denied all four of the claims and concluded that the claimant failed to prove accidental injuries arising out of and in the course of his employment on any of the dates in question.

Additional evidence was presented before Commissioner Alvin R. Cooke on October 26, 1988. At that hearing, the proceedings were limited to the claimant's condition since arbitration. On February 1, 1991, the Commission affirmed the arbitrator's decision. With respect to the May 1980, claim, the Commission found that the claimant had not presented any medical evidence of an injury. The Commission also found that the claimant had not provided the employer with notice of a May injury. Regarding the July 30 claim, the Commission found that the claimant suffered a myocardial infarction while vacationing in Florida. The Commission noted that Dr. Buckingham and Dr. Heckman both testified that the type of infarction the claimant suffered could have occurred whether the claimant was awake or asleep, active or inactive. The Commission also noted that insurance forms submitted by the claimant indicated that his condition was not due to an occupational injury or disease. Concerning the December 12 incident, the Commission concluded that the claimant had not provided the employer with notice of an alleged accidental injury. The Commission also noted that blood enzyme tests showed no new changes in the

claimant's condition. With respect to the December 18 incident, the Commission seemed to be relying on the testimony of Dr. Buckingham that the claimant suffered no heart attack on that date. However, the Commission noted Dr. Heckman's testimony that if the claimant suffered a subendocardial infarction on December 18, then it resulted primarily from the July 30 infarction.

The circuit court confirmed the decision of the Commission. The court reviewed the evidence in each case and concluded that the Commission's decision was not against the manifest weight of the evidence. The court concluded that since the Commission did not discuss the notice issue, the Commission found that no compensable injuries occurred.

The claimant raises three issues on appeal: (1) whether an extra degree of scrutiny should be applied to the record to determine whether there was sufficient support for the Commission's decision; (2) whether the Commission's decision is against the manifest weight of the evidence; and (3) whether the claimant gave proper notice to the employer.

■ The claimant initially argues, based on this court's decision in *Cook v. Industrial Comm'n* (1988), 176 Ill. App. 3d 545, 531 N.E.2d 379, that this court should apply an extra degree of scrutiny to the record to determine if there is sufficient support for the Commission's decision. In *Cook*, it was stated that an extra degree of scrutiny would be applied to the record in cases where the Commission rejected the arbitrator's factual findings without hearing any new evidence. The claimant argues that, in this case, the arbitrator did not rule on the numerous objections made by counsel for both parties in the evidence depositions of the various doctors in this case. Pursuant to a motion by the claimant's attorney, a Commissioner who was not a member of the panel that heard the case ruled on those objections. The claimant argues that since that Commissioner ruled on those objections instead of the arbitrator, the Commission could not have affirmed or adopted all of the arbitrator's findings. Nevertheless, the statement in *Cook* regarding an extra degree of scrutiny is not a standard of review recognized by this court. We will only consider whether the Commission's decision was against the manifest weight of the evidence.

■ The claimant next argues that the findings of the Commission with regard to all four of the claims were against the manifest weight of the evidence. It is for the Commission to determine the credibility of witnesses, to weigh the testimony and to decide the weight to be accorded the evidence. (*National Biscuit, Inc. v. Industrial Comm'n*

(1984), 129 Ill. App. 3d 118, 472 N.E.2d 91.) Where there are conflicting medical opinions, a court of review will not substitute its judgment for that of the Commission regarding what medical evidence will be believed, unless that decision is contrary to the manifest weight of the evidence. (*Azzarelli Construction Co. v. Industrial Comm'n* (1981), 84 Ill. 2d 262, 418 N.E.2d 722.) It is for the Commission to determine whether there was a causal relationship between the employment and the injury. (*County of Cook v. Industrial Comm'n* (1977), 69 Ill. 2d 10, 370 N.E.2d 520.) In a case involving a myocardial infarction, where one's heart has deteriorated to such an extent that any exertion becomes an overexertion, it is not sufficient to show merely that the employee has engaged in some job-connected physical activity prior to the attack. (*Rock Road Construction Co. v. Industrial Comm'n* (1967), 37 Ill. 2d 123, 227 N.E.2d 65.) At this point, we will consider separately the arguments and evidence with respect to each of the claims.

## I. MAY 1980

The claimant argues that the Commission ignored proper evidence in finding that he had not suffered a heart attack in May 1980. The claimant points out that the records of Florida Memorial Hospital indicate that he had been experiencing right arm pain for a few months before his July 1980 infarction. The claimant also complains that the Commission and arbitrator both failed to mention the testimony of Dr. Heckman that arm pain could mean a myocardial infarction and the testimony of Dr. Greenberg that there can be a delay between the time of physical exertion and a later infarction. The claimant also notes the testimony of his wife, who testified that he had been experiencing arm pain for a month before his July 30 infarction. The claimant tries to compare his case to repetitive-trauma cases, contending he is arguing the various dates as manifestation dates of his cardiac troubles that were caused by the physical and mental stresses of his work environment.

The employer argues that there was no evidence that the claimant suffered a heart attack in May 1980. The employer concedes that the claimant's symptoms were consistent with coronary disease, but argues that there was no causal connection between the claimant's employment and this disease. The employer points out that the claimant complained of arm pain while resting at home. The employer argues that the hospital records in Florida support its position that there was no May 1980 heart attack. Those records merely note that Dr. Meyers found the possibility of a prior myocardial infarction, but do not con-

clude that one had occurred. The employer further argues that, even if the claimant suffered a heart attack before July 1980, there is no evidence that it happened as early as May. The claimant's wife testified that the claimant's previous arm pain occurred approximately one month before July 30, which would mean around the first of July. The employer further notes the testimony of Dr. Meyers that the claimant was suffering from exogenous obesity, essential hypertension, and situational anxiety. The employer refutes the claimant's repetitive-trauma theory and asserts that even if such an argument could be made, the claimant would still have to prove that the injury was work related.

■ We find that the Commission's conclusion that the claimant suffered no heart attack in May 1980 was not against the manifest weight of the evidence. The circuit court relied on the Commission's statement that the claimant did not testify to or offer any evidence of a coronary incident in May 1980. The court also noted the Commission's statement that no physician testified that the July 30 infarction was related to stress in May. The bottom line is that there was no medical evidence of an infarction in May 1980, and the Commission's decision with regard to this claim was clearly not against the manifest weight of the evidence.

## II. JULY 30, 1980

All of the doctors who testified in this case agree that the claimant suffered an acute myocardial infarction on July 30, 1980, while vacationing in Florida. The dispute is over whether this heart attack was work related. The claimant argues that the Commission ignored evidence that this heart attack was causally related to the claimant's job-related stress. The claimant argues that he had a "nerve-wracking, stressful job." The claimant further relies on Dr. Greenberg's testimony that myocardial infarctions which occur in relation to activity can occur at some time remote from the activity. The claimant cites *Associates Corp. v. Industrial Comm'n* (1988), 167 Ill. App. 3d 988, 522 N.E.2d 102, for the proposition that some act of employment only needs to be a causative factor of the claimant's condition, rather than the sole, or even principal, causative factor.

The employer argues that there is no evidence to connect the claimant's myocardial infarction of July 30, 1980, to his employment. The employer points out that the claimant was vacationing in Florida when the heart attack occurred. Further, the claimant indicated on insurance forms that his condition was not work related. The employer also argues that there was no objective evidence to show that the

claimant's occupation of monitoring gauges on a panel was stressful. The employer also notes that the records of Sarasota Memorial Hospital indicate that the claimant had several risk factors: the claimant smoked a pipe, he was overweight but did not recognize this, he did not engage in regular aerobic exercise, he was under stress, and he appeared to have Type A personality characteristics.

■ We believe the circuit court properly concluded that the Commission's finding that the claimant suffered no accidental injury arising out of and in the course of of his employment on July 30 was not against the manifest weight of the evidence. The court correctly noted that the claimant presented no medical testimony that the myocardial infarction was precipitated, even in part, by his employment activities. As previously noted, the Commission relied on the testimony of both Dr. Buckingham and Dr. Heckman that the type of infarction the claimant sustained could have happened whether the claimant was active or inactive. When a claimant's condition has deteriorated to that point, compensation is denied. See *Rock Road Construction Co.*, 37 Ill. 2d 123, 227 N.E.2d 65.

### III. DECEMBER 12, 1980

The claimant argues with respect to this claim that the Commission ignored testimony that he was supposed to slowly increase his work load upon returning to work. The claimant also argues that he had to deal with an hour-and-a-half-long emergency on this date in addition to his usual activities. The claimant essentially reargues the facts with respect to December 12, noting the arm pain he experienced and also the records of Mercy Hospital showing possible inferior infarcts. The claimant further argues that it was error for the Commission to conclude that he failed to give notice to the employer of an injury on this date. The claimant points out that he told his foreman about the incident when he returned to work the following Monday.

■ The employer argues that the claimant's recitation of his work load on December 12 is irrelevant because the claimant suffered no compensable accident. The employer noted the testimony of Dr. Heckman that the claimant's condition was unchanged since August and the testimony of Dr. Greenberg that the claimant suffered no infarction on that date.

We agree with the employer. The evidence indicated only that the claimant suffered arm and neck pain; the evidence does not indicate that an infarction occurred. The claimant's own expert, Dr. Greenberg, testified that no infarction occurred on December 12. Clearly,

the Commission's decision was not against the manifest weight of the evidence.

## IV. DECEMBER 18, 1980

The claimant believes this to be the most compelling of his claims and devotes most of his argument to this date. The claimant first argues that the employer's own exhibits indicate that the claimant had a heart attack on December 18, and therefore, this should be held to be an admission by the employer that an infarction occurred on this date. The exhibits the claimant refers to are insurance forms wherein the claimant fills out the top portion and the claimant's attending physician fills out the bottom portion. The employer used these exhibits to show that the claimant marked "illness" rather than "work injury." On the bottom of these forms is Dr. Heckman's diagnosis of a possible myocardial infarction on December 18. The claimant argues that this indicates an admission by the employer that the claimant suffered a heart attack on that date, and also that the employer received notice. The claimant further argues, based on *Sohio Pipe Line Co. v. Industrial Comm'n* (1976), 63 Ill. 2d 147, 345 N.E.2d 468, that a claimant's statement on an insurance form that his disability was not due to an accident does not preclude compensation for a heart attack. The claimant then goes through an exhaustive repetition of the facts in this case and reiterates the fact that both Dr. Heckman and Dr. Greenberg found that the claimant suffered an infarction on December 18. The claimant argues that it was error for the Commission to ignore Dr. Heckman's and Dr. Greenberg's testimony. The claimant then makes the familiar arguments that activity at work only needs to be *a* cause of the heart attack, that a preexisting condition does not make a heart attack noncompensable, and that a compensable injury will be found upon a showing that a preexisting illness was aggravated by conditions in the workplace.

The employer relies on the testimony of Dr. Buckingham that the claimant suffered no infarction on December 18. The employer also notes the letter that Dr. Heckman wrote, which stated that he believed the claimant's coronary artery disease was unrelated to his employment. The employer argues that the Commission was faced with a conflict in the evidence and resolved that conflict in favor of the employer. The employer states that the claimant was reduced to rearguing the facts and that the Commission's resolution of the conflicts in the facts was not against the manifest weight of the evidence.

■ We find that the Commission was correct in denying compensation to the claimant for this claim. The Commission's decision was

not against the manifest weight of the evidence because of Dr. Buckingham's testimony. The Commission must choose between conflicting medical testimony and is entitled to draw reasonable inferences from it. (*Rambert v. Industrial Comm'n* (1985), 133 Ill. App. 3d 895, 477 N.E.2d 1364.) Also, Dr. Heckman testified that if the claimant did suffer an infarction on December 18, it resulted primarily from the infarct in July 1980. The evidence indicates that, as of July 1980, the claimant could have suffered an infarction without any exertion whatsoever. As previously noted, compensation is denied when a claimant's condition has deteriorated to that point. Surely, then, any infarction following the July 30 accident would also not be compensable, particularly if that infarction was primarily a result of the previous one. The circuit court properly concluded that the Commission's decision was not against the manifest weight of the evidence.

■ The final issue is whether the employer received notice of the claimant's alleged injuries. The employer argues that it did not receive proper notice of any injuries in May or December 1980. The claimant argues that any defect in notice should be waived because the employer failed to provide him with knowledge of his rights under the Act, failed to provide him with the Commission handbook, and because the employer has never raised the issue.

The circuit court properly noted that the issue of notice is only secondary, and first a compensable injury must be found. The evidence in this case indicates that there was no compensable accident. Our conclusion that the findings of the Commission were not against the manifest weight of the evidence renders a discussion of this issue moot.

For the foregoing reasons, the judgment of the circuit court of Champaign County is affirmed.

Affirmed.

McCULLOUGH, P.J., and RAKOWSKI, WOODWARD, and RARICK, JJ., concur.