LEE A. PLASTERS, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Old Ben Coal Company *et al.*, Appellees).

Fifth District (Industrial Commission Division)   No. 5—92—0177WC

Opinion filed April 15, 1993.—Rehearing denied July 27, 1993.

Harold B. Culley, Jr., of Raleigh, for appellant.

L. Robert Mueller, of Livingstone, Mueller, O'Brien & Davlin, P.C., of Springfield, for appellees.

JUSTICE RAKOWSKI delivered the opinion of the court:

On November 20, 1985, Lee Plasters (claimant) filed an application for adjustment of claim pursuant to the Workers' Occupational Diseases Act (Act) (Ill. Rev. Stat. 1985, ch. 48, par. 172.36 *et seq.*). Claimant alleged that his heart and lungs were impaired due to the inhalation of coal and rock dust which occurred while he was employed with Old Ben Coal Company (employer). The arbitrator found that the claimant was permanently and totally disabled, and the employer appealed the award to the Industrial Commission (Commission). The Commission affirmed the finding of disability but modified the amount of the award, finding that the claimant was entitled to permanent disability to the extent of 20%. The circuit court reversed the decision of the Commission, ruling that the claim was barred by the time period set forth in section 1(f) of the Act (Ill. Rev. Stat. 1985, ch. 48, par. 172.36(f)). The issues on appeal are: (1) whether the circuit court erred in applying section 1(f) of the Act to a claim based on coal miners' pneumoconiosis; (2) whether the circuit court's reversal of the Commission's determination that the claimant proved disablement pursuant to section 1(f) of the Act was error; and (3) whether the Commission's determination that the claimant was not totally disabled was against the manifest weight of the evidence. We affirm in part and reverse in part.

The claimant began working as a coal miner in 1939. He worked below ground as a trip rider for 10 years but left mining and joined the Navy. After serving in the Navy for about two years, he returned to mining and worked for the employer as a coal driller for 17½ years. The claimant testified that the dust was so bad at that time that he was unable to see a co-worker's light which was eight feet away. The claimant left the employer and went to work at another mine loading coal. Five and one-half years later the claimant returned to the employer, where he remained until his termination. When the claimant first returned to the employer, he worked as a miner-operator but "bid" off the job to do repairs because he could no longer perform the work.

The claimant stated that his breathing problems began four or five years before he left the employer. His symptoms progressed to the point that he had to stop and catch his breath while working, and he frequently required help from his co-workers.

After the mine shut down for one year, the claimant was called back to work as a laborer, tearing out old belts and replacing them. He also worked as a belt-walker and cleaner which involved his walking more than three miles a day and using a shovel. After the mine shut down a second time in December of 1982, the claimant did not return to mining because his breathing problems had progressed to the point that he could no longer perform his job. The claimant stated that he was continuously exposed to coal dust throughout his employment in the mines.

After the claimant left mining, his breathing problems continued to become progressively worse. At the time of his testimony before the arbitrator in August 1989, the claimant stated that he could not walk more than about a block before becoming short of breath and that he was no longer able to hunt or fish because of this limitation. He coughed a great deal and sometimes had to get up in the middle of the night and sit in a chair. The claimant further testified that he had received treatment for his breathing difficulty from his family doctor since retirement and that the doctor had prescribed medications and the use of an inhaler. At the time of the hearing, the claimant was seen by the doctor once a month unless his symptoms became worse and he had to arrange for an earlier visit.

Dr. Parviz B. Sanjabi was an internist specializing in pulmonary disease and a provider for the Department of Labor Black Lung Program. Under a grant from the Federal government, he developed a treatment program for people with chronic obstructive lung disease and pneumoconiosis. He also provided treatment for many coal miners in his private practice. Dr. Sanjabi first saw the claimant on February 20, 1986, to determine if he had coal miners' pneumoconiosis. His chief complaint was shortness of breath while climbing a flight of stairs, walking, or carrying a 25-pound weight and spasmodic coughing. The physical examination revealed that the claimant had prolonged expiratory time which is consistent with obstructed airways seen in some pneumoconiosis cases. Dr. Sanjabi reviewed the X rays from 1985, which indicated the presence of small opacities in all areas of the lung. Both the results of the X ray and the pulmonary-function studies were consistent with coal miners' pneumoconiosis. Dr. Sanjabi stated that because pneumoconiosis was a chronic disease which usually progresses slowly, the claimant had the disease when he stopped mining in December 1982. He further stated that additional exposure to coal dust at that time would have further damaged his lungs. Dr. Sanjabi described the claimant's disease in 1986 as simple pneumoconiosis.

In 1988 Dr. Sanjabi performed a bronchoscopy on the claimant when an X ray showed an abnormality not related to the pneumoconiosis. A biopsy showed no malignancy, and Dr. Sanjabi concluded that what was seen on X ray was probably scar tissue.

On September 7, 1988, the claimant was examined by Dr. Saeed A. Khan. Dr. Khan practiced internal medicine and received additional training in cardiology and pulmonary disease. He saw many patients with pulmonary problems, particularly those associated with mining. On examination, he noted that the claimant was dyspneic and cyanotic with clubbing of the fingernails. He also identified a right ventricle heave which indicated that the ventricle was enlarged. Other symptoms noted were decreased breath sounds in both lungs, dry crepitations (bubbling noise due to damaged lung tissue), and a narrowing of the bronchial tube which caused a whistling sound known as rhonchi. Pulmonary-function tests and blood-gas studies were performed which indicated impairment to the claimant's lungs suggestive of emphysema and coal miners' pneumoconiosis. The chest X rays showed marked interstitial fibrosis in both lung fields, hypertranslucency, and progressive massive fibrosis in both upper lobes. The board-certified radiologist concluded that the claimant had advanced pneumoconiosis. It was Dr. Khan's opinion that the impairment to the claimant's lungs and the resulting pneumoconiosis were caused by his years of exposure to coal dust and that if he continued to work in the mines his health would continue to deteriorate. Dr. Khan added that pneumoconiosis was an irreversible and chronic illness. Because of his pulmonary impairment, the claimant was also unable to do any suitable comparable work.

The arbitrator found that the claimant had pneumoconiosis which arose out of his coal-mining employment and that he was permanently and totally disabled. The Commission confirmed the finding of disability but concluded that the claimant was not obviously unemployable and had failed to prove that work was unavailable. Based on this determination, the Commission reduced the disability award to permanent disability to the extent of 20%. Both parties appealed the Commission's determination, and the separate appeals were consolidated. The circuit court reversed the decision of the Commission, finding that the claimant failed to prove disablement within two years of his last exposure pursuant to section 1(f) of the Act.

The claimant first contends that it was error for the circuit court to apply section 1(f) of the Act to his claim based on pneumoconiosis. The claimant argues that section 1(f) of the Act conflicts with

section 6(c) and frustrates the effect of the presumption in section 1(d).

Section 1(d) of the Act provides in relevant part:

"If a miner who is suffering or suffered from pneumoconiosis was employed for 10 years or more in one or more coal mines there shall, effective July 1, 1973 be a rebuttable presumption that his or her pneumoconiosis arose out of such employment." Ill. Rev. Stat. 1981, ch. 48, par. 172.36(d).

Section 1(f) of the Act provides:

"No compensation shall be payable for [or on] account of any occupational disease unless disablement, as herein defined, occurs within two years after the last day of the last exposure to the hazards of the disease, except in cases of occupational disease caused by berylliosis or by the inhalation of silica dust or asbestos dust and, in such cases, within 3 years of the last day of the last exposure to the hazards of such disease and except in the case of occupational disease caused by exposure to radiological materials or equipment, and in such case, within 25 years after the last day of last exposure to the hazards of such disease." Ill. Rev. Stat. 1981, ch. 48, ch. 172.36(f).

Section 6(c) provides in relevant part:

"Effective July 1, 1973 in cases of disability caused by coal miners pneumoconiosis unless application for compensation is filed with the Commission within 5 years after the employee was last exposed where no compensation has been paid, or within 5 years after the last payment of compensation where any has been paid, the right to file such application shall be barred." Ill. Rev. Stat. 1981, ch. 48, par. 172.41(c).

■ In *Goodson v. Industrial Comm'n* (1989), 190 Ill. App. 3d 16, 545 N.E.2d 975, the court addressed the applicability of sections 1(f) and 6(c) to a claim for death benefits under the Act by a surviving spouse. The court noted that where the language of a statute was subject to differing interpretations, it was necessary to determine the legislative intent by looking beyond the express language of the statute to the purpose it was to serve. "Different sections of the same statute should be considered as *in pari materia* and should be construed so as to avoid an illogical result." (*Goodson*, 190 Ill. App. 3d at 18.) The *Goodson* court described the legislative purpose of the Act as follows:

"The Workers' Occupational Diseases Act reflects the legislative balance between the rights of employees and employers. [Citation.] The purpose of the limitation provisions in question

is to protect the employer against claims too old to be adequately investigated and defended. [Citation.] Accordingly, *sections 1(f) and 6(c) should be read together to effectuate the legislative intent.* Section 1(f) clearly states that no compensation shall be payable for or on account of any occupational diseases unless the employee becomes disabled within three years of his last exposure to the hazard. That section evinces a legislative intent to reasonably limit an employer's period of potential liability for both disability benefits payable to an employee and death benefits payable to a survivor." (Emphasis added.) (190 Ill. App. 3d at 18-19.)

Although the surviving spouse argued that she only had to file her claim within the limitation period provided in section 6(c), the *Goodson* court held that disablement of the decedent within three years of his last exposure to asbestos was a condition precedent to recovery by the surviving spouse and that her claim was barred by section 1(f) of the Act. (*Goodson*, 190 Ill. App. 3d at 20.) The courts in *Whitney v. Industrial Comm'n* (1992), 229 Ill. App. 3d 1076, 594 N.E.2d 749, and *Dickerson v. Industrial Comm'n* (1991), 224 Ill. App. 3d 838, 587 N.E.2d 1045, citing *Goodson*, also held that compliance with section 1(f) was a condition precedent to recovery. Although *Goodson* and the two cases relying on it involved a claim by a surviving spouse rather than the employee, this factor does not distinguish it from the case *sub judice*. In ruling that a surviving spouse had to comply with section 1(f), the court held the employee's survivor to the same requirement to which the employee himself had been held. (See *Goodson*, 190 Ill. App. 3d at 19.) The claimant's argument regarding an alleged conflict between section 1(f) and section 1(d) is even less convincing. Section 1(d) involves no time requirement, only a *rebuttable* presumption of a causal relationship.

Claimant's remaining arguments regarding this issue are also without merit. Although he argues that section 6(c) should take precedence over section 1(f) because section 6(c) specifically refers to pneumoconiosis while section 1(f) includes it under the general phrase "occupational disease," the subject matter of each provision is different. Section 1(f) requires that disablement due to an occupational disease must occur within a specific time period after the last exposure, while section 6(c) is a statute of limitations which requires that a claim be filed within a time period after last exposure. Furthermore, the fact that a claimant must become disabled from an occupational disease within two years after his last exposure but has three more years to file a claim allows the claimant time to prepare for any ad-

ministrative or legal action he may decide to take. Finally, in response to claimant's argument that the failure to amend section 1(f) was an oversight on the part of the legislature or that somehow coal miners' pneumoconiosis is exempt from compliance with section 1(f), the court in *Whitney* stated:

> "Notwithstanding petitioner's argument is the plain fact that the legislature did not amend section 1(f) of the Act ***, and this court cannot presume that its failure to act was the result of oversight. This court's function is to interpret the law as enacted by the legislature. Our function is not to annex new provisions or substitute different ones or read into a statute exceptions, limitations or conditions which depart from its plain meaning. [Citation.] There is no rule of construction which authorizes a court to declare that the legislature did not mean what the plain language of the statute imports." *Whitney*, 229 Ill. App. 3d at 1078.

For these reasons, we conclude that section 1(f) is applicable to a claim based upon coal miners' pneumoconiosis.

■ The claimant next contends that the circuit court's reversal of the Commission's decision that he proved disablement within the statutory time period was error. Pursuant to section 1(e) of the Act, "disablement" is defined as:

> "[A]n impairment or partial impairment, temporary or permanent, in the function of the body or any of the members of the body, or the event of becoming disabled from earning full wages at the work in which the employee was engaged when last exposed to the hazards of the occupational disease by the employer from whom he or she claims compensation, or equal wages in other suitable employment ***." Ill. Rev. Stat. 1981, ch. 48, par. 172.36(e).

Whether a claimant has provided sufficient evidence of disablement is a question of fact for the Commission to determine, and its decision will only be reversed if it is against the manifest weight of the evidence. (*Zimmerly Construction Co. v. Industrial Comm'n* (1972), 50 Ill. 2d 342, 278 N.E.2d 789; *Gay v. Industrial Comm'n* (1989), 178 Ill. App. 3d 129, 532 N.E.2d 1149.) Where the evidence is conflicting or where different inferences may be drawn, a court will not disregard permissible inferences by the Commission merely because it may have drawn other inferences from the facts. As the court in *Dexheimer v. Industrial Comm'n* (1990), 202 Ill. App. 3d 437, 442-43, 559 N.E.2d 1034, stated:

"It is the province of the Commission to weigh and resolve conflicts in testimony, including medical testimony, and to choose among conflicting inferences therefrom. [Citations.] It is only when the decision of the Commission is without substantial foundation in the evidence or its finding is manifestly against the weight of the evidence that the findings of the Commission should be set aside."

(See also *O'Dette v. Industrial Comm'n* (1980), 79 Ill. 2d 249, 253, 403 N.E.2d 221.)

"A reviewing court cannot reject or disregard permissible inferences drawn by the Commission because different or conflicting inferences may also be drawn from the same facts nor can it substitute its judgment for that of the Commission unless the Commission's findings are against the manifest weight of the evidence." (*Martin v. Industrial Comm'n* (1992), 227 Ill. App. 3d 217, 219, 591 N.E.2d 108.)

It has been observed that "[t]he manifest weight of the evidence is that which is 'the clearly evident, plain and indisputable weight of the evidence.' [Citations.] In order for a finding to be contrary to the manifest weight of the evidence, an opposite conclusion must be clearly apparent." (*Drogos v. Village of Bensenville* (1981), 100 Ill. App. 3d 48, 54, 426 N.E.2d 1276.) Finally, "[i]f the undisputed facts permit an inference either way *** then the Commission alone is empowered to draw the inference and its decision as to the weight of the evidence will not be disturbed on review." *Morgan Cab Co. v. Industrial Comm'n* (1975), 60 Ill. 2d 92, 97, 324 N.E.2d 425.

In the case *sub judice* the Commission determined that the claimant proved disablement pursuant to sections 1(e) and (f) of the Act based on his own testimony before the arbitrator and that of Drs. Sanjabi and Khan. The Commission also considered the deposition testimony of the employer's physician, Dr. Selby. The claimant testified that he worked as a coal miner for 44 years and retired in December 1982. Four to five years prior to his retirement the claimant began to have breathing problems where he became short of breath while working and required help from his co-workers to perform his job. The claimant stated that after retirement his breathing problems became progressively worse, and he could barely walk a block without having difficulty breathing. He was seeing his family doctor approximately once a month and taking medication for his breathing problems since his retirement.

Dr. Sanjabi examined the claimant 14 months after the statutory time period ended. His evaluation of the claimant's condition con-

sisted of a history, physical examination, X ray and pulmonary-function test which indicated that the claimant had prolonged expirations, as well as a mild obstruction and opacities in his lungs. Dr. Sanjabi concluded that the claimant suffered from pneumoconiosis which resulted from his work in the mines. Dr. Sanjabi testified that further exposure to coal dust would worsen the claimant's lung condition. He concluded that because of the degree of impairment to the claimant's respiratory system and the fact that the disease was a chronic, slowly progressing illness, the claimant had pneumoconiosis when he retired from mining in December 1982.

Dr. Khan examined the claimant in September 1988. In addition to the history, physical examination, chest X ray, and pulmonary-function test, Dr. Khan ordered an arterial blood-gas study. He confirmed the finding that the claimant suffered from pneumoconiosis and emphysema due to his years of exposure to coal dust. The chest X ray showed that the claimant had massive fibrosis consistent with complicated pneumoconiosis. On examination, he found that the claimant was short of breath and cyanotic due to decreased oxygen saturation in the blood, which was indicative of chronic lung disease. Other symptoms found on examination were a right ventricle enlargement, decreased breath sounds in both lungs, a bubbling noise due to damaged lung tissue, and a whistling sound caused by the narrowing of the bronchial tube. Dr. Khan also stated that pneumoconiosis was a chronic and irreversible disease. It was his opinion that the claimant was unable to perform any suitable comparable job because of his pulmonary impairment.

Dr. Jeffrey Selby examined the claimant at respondent's request in June 1988 and reviewed medical reports which were subsequently offered into evidence at the arbitration hearing. The arbitrator refused to allow the deposition or the attached exhibits into evidence, but on review before the Commission, the deposition without the exhibits was considered with the other evidence. Dr. Selby testified that he was certified in internal medicine, pulmonology, and critical care. He testified that the claimant's pulmonary-function test, blood-gas studies, and chest X ray were negative for pneumoconiosis. He concluded instead that the claimant had asthma and apical lesions due to inactive tuberculosis and that the claimant could return to mining.

Based on this evidence, the Commission determined that the claimant was suffering from pneumoconiosis which arose out of his employment in the coal mines, and that he proved that he was disabled within two years of his last date of exposure which was December 31, 1982. However, while the Commission found that the claimant

could no longer work as a coal miner or in other comparable work earning equal wages, his disability was not so extensive that he was obviously unemployable. Therefore, the Commission modified the decision of the arbitrator finding that claimant was permanently disabled to the extent of 20% pursuant to section 8(d)(2) of the Workers' Compensation Act (Ill. Rev. Stat. 1989, ch. 48, par. 138.8(d)(2)).

The circuit court found that the decision of the Commission was against the manifest weight of the evidence because the claimant had not presented any evidence of disablement due to pneumoconiosis within the two years following his retirement in 1982. Despite the extensive medical testimony from Drs. Sanjabi and Khan, the court reasoned that because neither doctor examined the claimant by December 1984, their testimony was not evidence that the claimant had pneumoconiosis or was disabled within the statutory time period.

However, we conclude that there was sufficient evidence to support the Commission's determination, based on the claimant's testimony regarding his symptoms as well as Dr. Sanjabi's unequivocal statement that, based on the degree of impairment to the claimant's respiratory system, the claimant had pneumoconiosis when he retired from mining in 1982. Furthermore, where Dr. Sanjabi and Dr. Khan testified as to the slow progression of pneumoconiosis, their testimony was evidence of disablement within the statutory time period even though it was based on examination of the claimant after the time had expired.

In *Monterey Coal Co. v. Industrial Comm'n* (1992), 241 Ill. App. 3d 386, 392, the appellate court held that the Commission had permissibly inferred that the claimant's disablement occurred within the statutory time period based on the claimant's testimony, as well as the testimony of his examining physicians. Both physicians who had substantial experience dealing with coal workers' pneumoconiosis described it as a slowly progressing chronic disease which manifested itself in a debilitating manner over a number of years. For this reason, the appellate court rejected the employer's argument that because the claimant's physicians examined him after the statutory period expired their opinions should not have been considered. (See also *Zeigler Coal Co. v. Industrial Comm'n* (1992), 237 Ill. App. 3d 213, 604 N.E.2d 481.) In the case *sub judice*, we also reject a similar argument by the employer, and we, therefore, conclude that the Commission's determination that the claimant's disablement occurred within the statutory time period was not against the manifest weight of the evidence.

The claimant also raised the argument that the employer waived this issue by failing to raise it before the arbitrator. Because of the

decision we have reached on this issue, we need not address the claimant's waiver argument.

■ The claimant's final contention is that the Commission's determination that he was not totally disabled was error. The determination of the extent or permanence of a claimant's disability is a question of fact for the Commission to determine, and its decision will not be set aside unless it is against the manifest weight of the evidence. (*Hutson v. Industrial Comm'n* (1992), 223 Ill. App. 3d 706, 714, 585 N.E.2d 1208.) The claimant has the burden of proving the extent and permanence of his injury by a preponderance of evidence. (*Esposito v. Industrial Comm'n* (1989), 186 Ill. App. 3d 728, 737, 542 N.E.2d 843.) Once the claimant has met this burden, the burden shifts to the employer to show that some kind of competitive market exists and that work is regularly and continuously available to the claimant. (*Hutson*, 223 Ill. App. 3d at 714, citing *Esposito*, 186 Ill. App. 3d 728.) The extent of disability is dependent upon the extent to which the illness or injury has impaired the claimant's earning capacity or ability to work. (*E.R. Moore Co. v. Industrial Comm'n* (1978), 71 Ill. 2d 353, 361, 376 N.E.2d 206.) In determining whether the employee is capable of performing any useful services, the Commission must consider the age, training, education, and skills of the claimant as well as the extent of his illness or injury and the nature of employment. (*Caradco Window & Door v. Industrial Comm'n* (1981), 86 Ill. 2d 92, 100, 427 N.E.2d 81.) As the court in *Valley Mould & Iron Co. v. Industrial Comm'n* stated:

> "[I]f the claimant's disability is limited in nature so that he is not obviously unemployable, or if there is no medical evidence to support a claim of total disability, the burden is upon the claimant to establish the unavailability of employment to a person in his circumstances. However, once the employee has initially established that he falls in what has been termed the 'odd-lot' category (one who, though not altogether incapacitated for work, is so handicapped that he will not be employed regularly in any well-known branch of the labor market [citation]), then the burden shifts to the employer to show that some kind of suitable work is regularly and continuously available to the claimant." (*Valley Mould & Iron Co. v. Industrial Comm'n* (1981), 84 Ill. 2d 538, 546-47, 419 N.E.2d 1159.)

Where the claimant is required to show the unavailability of work, he can meet this burden by showing that reasonable efforts were made to secure employment that could be performed by a person in a simi-

lar condition. *A.M.T.C. of Illinois, Inc. v. Industrial Comm'n* (1979), 77 Ill. 2d 482, 490, 397 N.E.2d 804.

In the case *sub judice* the Commission found that the claimant was not entitled to a total disability award because his disability was limited and he was not obviously unemployable. The Commission also noted that there was no evidence in the record that the claimant made a reasonable effort to secure employment that could be performed by someone in his circumstances. The claimant argues that it was error for the Commission to find that he was required to show evidence of an effort to obtain employment because, based on his disability, age at retirement, and lack of education, experience, or training, he was unable to perform any services except those for which no stable labor market existed. See *E.R. Moore Co.*, 71 Ill. 2d 353, 376 N.E.2d 206.

The evidence before the Commission was the fact that the claimant was 64 years of age at the time of his termination from his coal-mining position. He had an eighth-grade education, and all of his work experience had been in the coal mines, although he had performed a variety of jobs in mining. According to the claimant's testimony, he worked as trip rider, a driller, a loader, a miner-operator, and finally a repairman. Although there was medical testimony that the claimant's respiratory system was impaired, neither Dr. Sanjabi or Dr. Khan testified that the claimant was totally disabled. Based upon the foregoing, we cannot say that claimant's opposite conclusions are clearly evident.

Accordingly, the judgment of the circuit court confirming the decision of the Commission that section 1(f) applies to this claim is affirmed, and its judgment reversing the decision of the Commission regarding the claimant's proof of disablement within the statutory time period is reversed.

Affirmed in part and reversed in part.

McCULLOUGH, P.J., and WOODWARD, STOUDER, and RARICK, JJ., concur.