FREEMAN UNITED COAL MINING COMPANY, Appellant, v. THE INDUSTRIAL COMMISSION et al. (Oral F. Gower, Appellee).

Fifth District   No. 5—93—0473WC

Opinion filed June 21, 1994.

Kenneth F. Werts and Nancy R. Kuhnke, both of Craig & Craig, of Mt. Vernon, for appellant.

Harold B. Culley, Jr., of Culley & Wissore, of Raleigh, for appellee.

JUSTICE SLATER delivered the opinion of the court:

Claimant Oral F. Gower filed an application for adjustment of claim pursuant to the Workers' Occupational Diseases Act (the Act) (Ill. Rev. Stat. 1983, ch. 48, par. 172.36 *et seq.*) on June 21, 1984. The arbitrator found that claimant was permanently partially disabled to the extent of 5% as a result of coal workers' pneumoconiosis, chronic bronchitis, and hyperreactive-airways disease. Both claimant and his employer, Freeman United Coal Mining Company, filed petitions for review of the arbitrator's decision. The Industrial Commission (the Commission), with one member dissenting, modified the arbitrator's decision and found that claimant was permanently partially disabled to the extent of 30%. The circuit court confirmed the decision of the Commission. On appeal, the employer contends that the Commission's decision was against the manifest weight of the evidence. Specifically,

the employer argues that each of the following findings is against the manifest weight of the evidence: (1) that claimant was last exposed to an occupational disease on June 16, 1984; (2) that claimant has an occupational disease; (3) that claimant's condition of ill-being is causally related to an occupational disease; (4) that claimant is permanently partially disabled to the extent of 30% of the man as a whole; and (5) that claimant proved disablement within two years after the last day of last exposure to the hazards of an occupational disease.

Claimant was born on September 17, 1928, and was 62 years old at the time of arbitration. He began working as a coal miner in 1944 when he hand-loaded coal at a mine in Marion, Illinois. The environment was very dusty, and he breathed coal dust on a daily basis. After serving in the Army, claimant worked for Peabody Coal Company at its number 40 mine at Harrisburg, Illinois. Claimant worked as a roof bolter, and he was exposed to large amounts of coal dust.

In 1954, claimant began working at the employer's number four mine in Pittsburg, Illinois, where he acted as a roof bolter, laborer, belt repairman, examiner, and diesel mechanic. The last five or six years of his employment he worked above ground as a diesel mechanic. Claimant described the dust conditions as "pretty bad" and "[a]t times it was real bad and you couldn't hardly see the belt-line." Claimant testified that he had worked more than 37 years in coal mining and he was exposed to and breathed coal dust on a daily basis. He stated that he stopped working because he had trouble breathing and he was unable to carry tools or equipment or work at a rapid pace. Claimant first noticed his breathing problems in 1972 while working as a belt repairman. He was subject to frequent colds and infections, and he became short of breath whenever he tried to do anything fast. Claimant testified that on June 16, 1984, his last day of employment, he was working as a diesel mechanic and he was exposed to and breathed coal dust.

Claimant has never done any type of work other than coal mining, and he has not been employed since June 16, 1984. He did not seek employment after leaving mining because he was unable to work. Claimant testified that his breathing problems have worsened over the years, limiting his activities. By the time of arbitration, he could only walk 20 to 30 yards or climb five or six stairs before he had to stop and catch his breath.

Claimant's only significant mine accident occurred in 1982 when he was hit in the head by a pipe while putting a boom on a drag line. He was taken to Marion Hospital and was off work for one week. His

accident-related problems have gone away. Other than his breathing difficulties, he has no health problems.

Dr. Herman Lyle, who is board certified in internal medicine, testified that claimant has been his patient since June 30, 1978. During that time, claimant has had office visits on an average of once every two months. At claimant's initial visit with Dr. Lyle he complained of shortness of breath and reported that he had a daily productive cough for more than five years. Pulmonary-function tests taken in March of 1977 by claimant's former treating physician were interpreted as evidencing mild obstructive pulmonary disease with reversibility to normal after using bronchiodilaters. These findings are most often seen in bronchospasms, such as asthmatic bronchitis. A pulmonary-function study performed in 1980 revealed forced vital capacity of 61% of predicted, $FEV_1$ of 68% of predicted, FEF of 90% of predicted, and MVV of 50% of predicted. Another pulmonary-function study was performed in 1983, and it showed normal volume and normal flow. The 1983 study also revealed that claimant had a decreased functional residual capacity, the etiology of which was unknown. Dr. Lyle compared the 1983 pulmonary-function test results to the 1980 pulmonary-function test results and felt there was marked improvement. He testified that it was not normal for the pulmonary-function test results to improve so much over time. Those findings may have resulted from the use of new and more accurate equipment in 1983.

Arterial-blood-gas testing performed in 1983 revealed findings within normal limits. A chest X ray taken in November of 1983 was negative. According to Dr. Lyle, a person can have normal pulmonary-function studies and normal arterial-blood-gas studies and still have a severe respiratory impairment. Dr. Lyle testified that he diagnosed claimant as suffering from exogenous obesity, which is caused by overeating or underexercising. Obesity can cause symptoms of tiredness and shortness of breath. Dr. Lyle testified that claimant complained of feeling tired and weak and easily fatigued and that these symptoms could be related to his obesity.

In Dr. Lyle's opinion, claimant has a respiratory ailment caused by his prolonged exposure to coal dust. He further opined that claimant has chronic bronchitis related to the inhalation of coal dust. Dr. Lyle also testified that claimant exhibited symptoms of asthmatic bronchitis, which is one component of his overlying bronchitis. Although he was unsure if inhaling coal dust could cause asthma, Dr. Lyle stated that coal dust could definitely aggravate an underlying asthmatic condition. In Dr. Lyle's opinion, claimant's respiratory impairment precluded him from working as a coal miner, and from

an overall medical standpoint, he was totally disabled from working in any capacity. Claimant's respiratory problems were permanent, and further exposure to coal dust would aggravate his condition.

Dr. Lyle further testified that claimant is also disabled from working in coal mining as a result of the head injury he sustained in 1982. Dr. Lyle did not treat claimant with regard to his head injury, which causes vertigo, but he was aware of the condition. Dr. Lyle testified that claimant's vertigo puts him at risk for working around heavy equipment.

Dr. Vest, who is board certified in internal and pulmonary medicine, examined claimant on October 2, 1984. That examination consisted of a patient history, a physical examination, an EKG, pulmonary-function testing, arterial-blood-gas testing, and a chest X ray. Claimant related to Dr. Vest a four- to five-year history of increasing shortness of breath; claimant was able to walk approximately one block and climb approximately two to three flights of stairs. Claimant also told Dr. Vest of a daily cough which had persisted for the last eight years.

Physical examination of the chest revealed normal expansion with very fine rales at both bases. Arterial-blood-gas studies yielded findings within normal limits. Pulmonary-function-study results were consistent with mild obstruction to airflow. Because of suboptimal efforts, however, the results were not valid for interpretation. A chest X ray did not reveal evidence of pneumoconiosis. Based on claimant's history of exposure to coal dust and the results of his physical examination, Dr. Vest concluded that claimant had coal workers' pneumoconiosis. Although Dr. Vest described claimant's impairment as "a minimal degree of obstruction," he stated that claimant could not physically do the work of a coal miner, and the pneumoconiosis was a contributing factor in claimant's overall disability.

Dr. Peter Tuteur is board certified in internal medicine and pulmonary disease. He first examined claimant in February of 1981 after he was referred by Dr. Lyle. Claimant related a history of shortness of breath and cough beginning in 1975. Claimant developed pneumonia in 1977 and again in 1980. Claimant told Dr. Tuteur that he had smoked one-half pack of cigarettes per day for 10 years, quitting 25 years prior to the onset of symptoms. Claimant's chest examination was within normal limits, and chest X rays were negative. Blood-gas analysis revealed no impairment, and the results of pulmonary-function studies were normal. In Dr. Tuteur's opinion, claimant did not have clinically significant, physiologically significant, or radiographically significant coal workers' pneumoconiosis.

Dr. Tuteur believed that the episodes of breathlessness, wheezing, and coughing were a result of hyperreactive-airways disease of undetermined cause.

Dr. Tuteur next examined claimant in March of 1988 at the employer's request. At that time, claimant related a history from 1981 to 1988 wherein he experienced some exercise limitations but no longer experienced coughing, wheezing, or chest pain. He also related a 1982 head injury which caused difficulty with equilibrium. A physical examination of claimant in 1988, including a chest X ray, pulmonary-function studies, and arterial-blood-gas studies, yielded normal results. Dr. Tuteur again expressed the opinion that claimant did not have clinically significant, physiologically significant, or radiographically significant coal workers' pneumoconiosis. Claimant still suffered from a hyperreactive-airways condition which, in Dr. Tuteur's opinion, was not related to or caused by the inhalation of coal dust. On cross-examination, Dr. Tuteur agreed that claimant's hyperreactive-airways disease could have been caused by his coal mine employment, but he doubted it.

Dr. Robert Bruce examined claimant in April of 1984 at the request of Dr. Lyle. Dr. Bruce's consultation report was submitted into evidence by the employer. Claimant complained of a burning sensation occurring in the anterior chest, lightheadedness, and a sensation of difficulty getting air into his lungs. An examination of claimant's chest indicated that breath sounds were of normal quality, and no crackles, gurgles, or wheezes were heard. Pulmonary-function studies conducted in 1981 and 1983 were entirely within normal limits. Dr. Bruce made no mention of coal workers' pneumoconiosis in his report but stated that claimant had chronic bronchitis without evidence of physiologic impairment in lung function.

As previously indicated, the Commission modified the arbitrator's decision that claimant was 5% disabled, finding instead that he was permanently partially disabled to the extent of 30%. The circuit court confirmed the Commission's decision. The employer contends that various factual findings of the arbitrator and the Commission were against the manifest weight of the evidence. First, the employer disputes the finding that claimant was last exposed to the hazards of an occupational disease on June 16, 1984. Employer notes that claimant worked above ground as a diesel mechanic for the last five or six years of his employment. Employer argues that there was no evidence presented regarding the duration or degree of exposure to an occupational hazard on June 16, 1984, or that exposure on that date was causally related to his disease.

■ In this case claimant testified that he last worked on June 16,

1984, and on that day he was exposed to and breathed coal dust. This testimony was uncontradicted. Dr. Lyle testified that claimant was disabled due to respiratory problems caused by inhaling coal dust and that exposure to coal dust aggravates claimant's condition. It is within the province of the Commission to draw reasonable inferences from the evidence, and its decision will not be disturbed unless it is contrary to the manifest weight of the evidence. (*Paganelis v. Industrial Comm'n* (1989), 132 Ill. 2d 468, 548 N.E.2d 1033.) A finding is not against the manifest weight of the evidence unless an opposite conclusion is clearly evident. (*Hicks v. Industrial Comm'n* (1993), 251 Ill. App. 3d 320, 621 N.E.2d 293.) Given the testimony of claimant and Dr. Lyle, it was clearly reasonable for the Commission to find that claimant's inhalation of coal dust on June 16, 1984, was his last exposure to the hazards of an occupational disease and that this exposure was causally related to his disease.

The employer next contends that the Commission's findings, that claimant has an occupational disease and that claimant's condition of ill-being is causally related to that disease, are against the manifest weight of the evidence. The employer acknowledges the testimony of Dr. Lyle that claimant has chronic bronchitis related to inhaling coal dust and Dr. Vest's diagnosis of pneumoconiosis. However, the employer notes that the results of several chest X rays were negative and that Dr. Tuteur and Dr. Bruce did not find that claimant had pneumoconiosis. Employer also maintains that claimant's disablement is due to his obesity or the head injury he sustained in 1982.

It is not the function of this court to reweigh the evidence. "A reviewing court cannot reject or disregard permissible inferences drawn by the Commission because different or conflicting inferences may also be drawn from the same facts nor can it substitute its judgment for that of the Commission unless the Commission's findings are against the manifest weight of the evidence." (*Martin v. Industrial Comm'n* (1992), 227 Ill. App. 3d 217, 219, 591 N.E.2d 108, 109.) As the court stated in *Dexheimer v. Industrial Comm'n* (1990), 202 Ill. App. 3d 437, 442-43, 559 N.E.2d 1034, 1037:

> "It is the province of the Commission to weigh and resolve conflicts in testimony, including medical testimony, and to choose among conflicting inferences therefrom. [Citations.] It is only when the decision of the Commission is without substantial foundation in the evidence or its finding is manifestly against the weight of the evidence that the findings of the Commission should be set aside."

We will not again recite the testimony of the various witnesses. We deem it sufficient to note the testimony of Dr. Lyle that claimant's

bronchitis was related to the inhalation of coal dust, that his condition prevented him from working as a coal miner, and that further exposure would aggravate his condition. We further note the testimony of Dr. Vest that claimant's shortness of breath was caused by pneumoconiosis, which was related to his exposure to coal. While there was other testimony which contradicted those diagnoses, the resolution of such conflicts is the province of the Commission.

The employer next contends that the Commission's finding that claimant is permanently partially disabled to the extent of 30% is against the manifest weight of the evidence. Employer maintains that claimant is not disabled as the result of an occupational disease or, if he is disabled, the evidence did not support the increase by the Commission from 5% to 30%. Employer notes Dr. Lyle's testimony that claimant was disabled due to vertigo caused by his head injury in 1982. Employer also relies on the results of the arterial-blood-gas and pulmonary-function studies, Dr. Tuteur's testimony that claimant had no physical problems related to coal mine employment, and Dr. Bruce's finding of no physiologic impairment in lung function. Employer also notes that claimant voluntarily retired.

■ A determination of the extent of a claimant's disability is a question of fact, and the Commission's decision will not be set aside unless it is against the manifest weight of the evidence. (*Hutson v. Industrial Comm'n* (1992), 223 Ill. App. 3d 706, 585 N.E.2d 1208.) When conflicting medical testimony is presented, it is for the Commission to determine which testimony is to be accepted. (*Hutson*, 223 Ill. App. 3d 706, 585 N.E.2d 1208.) In this case, claimant testified that his breathing problems began in 1975 when he noticed that exertion caused him to become short of breath. His condition has gradually grown worse, until he now can walk no more than 20 or 30 yards or climb a few steps without stopping to catch his breath. Dr. Lyle testified that claimant's respiratory problems precluded him from working as a coal miner, and from an overall medical standpoint, claimant was totally disabled from working in any capacity. Although Dr. Lyle also testified that claimant was disabled due to his head injury, compensation is allowed even if other factors contributed to the disability. (*Azzarelli Construction Co. v. Industrial Comm'n* (1981), 84 Ill. 2d 262, 418 N.E.2d 722; see also *Swanson v. Industrial Comm'n* (1984), 128 Ill. App. 3d 631, 471 N.E.2d 200.) In addition, Dr. Vest testified that claimant was unable to do the work of a coal miner and that pneumoconiosis was a contributing factor in his overall disability. Finally, while claimant's retirement may have been "voluntary" in one sense, he testified that he stopped working because he had trouble breathing. In any event, voluntary retirement does not

preclude an award of benefits under the Act. See *General Steel Industries v. Industrial Comm'n* (1971), 49 Ill. 2d 552, 276 N.E.2d 290.

■ The employer's final contention is that claimant failed to prove that disablement occurred within two years after the last day of the last exposure to the hazards of the occupational disease, as required by section 1(f) of the Act. (Ill. Rev. Stat. 1983, ch. 48, par. 172.36(f).) Compliance with section 1(f) is a condition precedent to recovery. See *Plasters v. Industrial Comm'n* (1993), 246 Ill. App. 3d 1, 615 N.E.2d 1145.

"Whether a claimant has provided sufficient evidence of disablement is a question of fact for the Commission to determine, and its decision will only be reversed if it is against the manifest weight of the evidence." (*Plasters*, 246 Ill. App. 3d at 8, 615 N.E.2d at 1150.) In this case, claimant's last day of exposure was his last day of employment, June 16, 1984. Claimant testified that he stopped working because he had trouble breathing. Dr. Lyle testified that claimant had chronic bronchitis which disabled him from working as a coal miner. Dr. Vest, who examined claimant a few months after he stopped working, concluded that claimant had coal worker's pneumoconiosis and that he was physically unable to work as a coal miner. From this record, we find that the evidence supports the Commission's conclusion that claimant's disablement occurred within the statutory two-year period.

The judgment of the circuit court of Williamson County confirming the Commission's decision is affirmed.

Affirmed.

McCULLOUGH, P.J., and RAKOWSKI, WOODWARD, and RARICK, JJ., concur.