(No. 39872.—

OSCO DRUG, INC., Appellant, *vs.* THE INDUSTRIAL COMMISSION OF ILLINOIS *et al.*—(GLADYS P. KEITH, Appellee.)

*Opinion filed January 19, 1967.*

MILLER, THOMAS, HICKEY & COLLINS, of Rockford, (WILLIAM E. COLLINS, of counsel,) for appellant.

VICTOR, HENNELLY AND GAZIANO, of Rockford, (JOHN E. SYPE, of counsel,) for appellee.

Mr. JUSTICE UNDERWOOD delivered the opinion of the court:

Gladys P. Keith filed an application for adjustment of claim against Osco Drug, Inc., based upon an injury to her right arm. The arbitrator awarded compensation based on findings of temporary total incapacity and complete loss of use of the right arm. Additional testimony was presented to the Industrial Commission which affirmed as did the Winnebago County circuit court.

The employer's principal contention on appeal is that the proof is insufficient to establish a causal connection between the claimant's injury and the malignant tumor which developed at the point of the injury, and that the finding that such causal relationship existed is against the manifest weight of the evidence.

While employed by Osco on August 13, 1962, claimant bumped her right wrist against the corner of a "2 x 4". She testified that she was in excellent physical condition prior to the accident, but that immediately thereafter a lump the size of a half dollar appeared at the point of impact. While she suffered some pain for two hours after the accident, there was no pain thereafter. A bruise, which disappeared in about a week, appeared along with the swelling. She also said that the swelling never subsided, never changed in con-

sistency, but increased in size as time passed, and that when it reached the size of a small egg, two months later, she went to see her family doctor who referred her to Dr. William Newman. After examining and X-raying her arm, Dr. Newman operated in October to remove a myosarcoma appearing at the exact point where the claimant was injured and followed this surgery with X-ray treatments.

Mrs. Keith testified that the swelling reappeared at the same spot in May of 1963, and was about the same size as when it first appeared. Again it kept increasing in size, and the claimant returned to Dr. Newman on June 8. After examining her and sending her to Mayo Clinic for further examination, he amputated her right arm two inches above the elbow.

Dr. William Keenan was called in support of Mrs. Keith's claim that the myosarcoma was causally connected with the accident. Dr. Keenan, who had practiced medicine 14 years, was a staff member of the only Rockford hospital having a recognized tumor clinic; he had served a year's residency in pathology during which he did post-mortem examinations, read tissue and attended a tumor clinic. He practiced two years at an apparently unspecialized clinic in Boston and took a University of Southern California post-graduate course in internal medicine for three months. He had taken the one week course in cancer sponsored by the Illinois State Cancer Society in each of two years. Dr. Keenan had no connection with the diagnosis or treatment of Mrs. Keith, his only knowledge of the case prior to hearing having resulted from his conversations with her lawyer. He heard her testimony and read the hospital and medical records during a short recess for this purpose in the course of the hearing. Dr. Keenan expressed the opinion that there might or could be a causal relationship between the injury and the cancer and said that a sufficient period of time elapsed between the injury and removal of the tumor for the relationship to exist. He felt that what the

claimant first discovered was a hematoma, which changed, during the process of regeneration of the injured tissue, into a myosarcoma. He said that this could have occurred, with the injury extending into the muscle, as it would have to do to be causally connected with the myosarcoma, without necessarily causing any loss of function to any portion of the hand or arm.

The employer utilized three experts at the initial hearing and a fourth before the Industrial Commission. The first was Dr. Anthony Curreri, Professor of Surgery and Director of Clinical Oncology (tumor study) at the University of Wisconsin.

Dr. Curreri had been practicing medicine since 1933. His main specialty is thoracic surgery, but he has been involved to a considerable degree in cancer research, and, at the time of the hearing, was in charge of a vast amount of such activity at the University of Wisconsin. Much of his surgical experience was in tumor cases. He belonged to various medical societies connected with cancer research and held major offices in some of them. Although he had no connection with Mrs. Keith's diagnosis or treatment, he had reviewed and studied her medical records after they had been sent to him by the employer's lawyer six weeks before the hearing. He was of the opinion, based on the chronological history, the trauma itself, and experimental evidence, that there was no relationship between the injury and the cancer. He said that what the claimant discovered immediately after the accident had to be either a hematoma or a growth which existed prior to her injury but which was brought to her attention at that time. He said that it was impossible for a tumor to grow to the size of a half dollar over night, but that tumors are quite often first discovered following a bump, and that, while there is sometimes explosive growth in connection with a cancer, this did not occur here.

The doctor also dismissed his first alternative, saying

that, if there had been a hematoma, there should have been telltale evidence of hemosiderin or scar tissue and some cellular inflammation in the tumor removed from Mrs. Keith's arm by the first operation. He also stated that the tumor would have changed in consistency over the two-month period, becoming fibrous or calcified, before she went to the doctor. He said that if a change had occurred there also would have been telltale evidence of this in the tissue first removed. The telltale evidence was not present in the first tumor and Mrs. Keith testified that the tumor felt the same throughout the two-month period. He said that if there had been any muscle damage, the claimant would have suffered much pain, while Mrs. Keith said she felt none any later than two hours after the accident.

Dr. Curreri further testified that neither his own research nor any other had uncovered a single recorded case where direct trauma on normal tissue produced a cancer, and that there was much evidence in everyday life to support the contrary conclusion. Even if this were possible, however, it would have taken at least four to five months for the tumor to reach the size it had when the claimant first discovered it. He said that it is possible for a dormant cancer to be aggravated or lighted by a trauma, but had this occurred here, there ought to have been evidence of an explosive type of growth. Also, he said that the rate of growth which the claimant said had taken place, *i.e.,* sudden enlargement immediately after the accident, followed by slow growth for two months, was incompatible with this.

He testified that a carcinogen, such as smoke, followed by a physical agent, can produce a cancer, but that a trauma cannot be a carcinogen and that, when a physical agent follows a carcinogen, the cancer will only appear at a much later time. He also said that a carcinogen is not normally present in humans.

The employer's second expert witness was Dr. William Newman, the claimant's attending physician, who had per-

formed both operations. He had practiced 14 years and specialized in orthopedic surgery, following a four-year residency therein. He testified that claimant told him that she had no visible hemorrhage after the accident. He also testified that he found no evidence of trauma at the time of the first operation, and that if Mrs. Keith had sustained a trauma of any significance he would have expected to find scar tissue. He expressed the opinion that, as far as he knew, there was no causal relationship between the trauma and the cancer.

It was stipulated that Dr. Richard Novak, called by the employer, was well qualified in his specialty of pathology. His work included the study of tissues, examination as to their contents, and diagnosis of conditions present within them. He was also engaged in the etiology of malignant tumors. He did pathological studies on the specimen removed from Mrs. Keith's arm and sent to him by Dr. Newman after the first operation and on her right arm after the second operation. He was also of the opinion that there was no causal connection between the myosarcoma and the injury. Considering the size of the tumor on August 13, it was his opinion that it was present at that time, and that the bump probably brought the tumor to the claimant's attention. He further testified that he was not of the opinion that a hematoma was present, as there was no hemosiderin or calcium deposit in the specimen he examined following the claimant's first operation. He said that he was not of the opinion that trauma could never produce cancer and that he had no real proof of what caused the claimant's tumor.

In the hearing before the commission, the employer called Dr. Robert Samp, assistant professor in the Division of Clinical Oncology and assistant professor in the Department of Surgery at the University of Wisconsin, as its medical expert. Dr. Samp had been engaged in his spe-

cialty, the study of cancer in the human, a large part of which involved cancer research, for some nine years. He was a member of several medical societies in connection with his specialty and had written articles and given talks on causation of cancer. At the time of the hearing he was the coordinator for the supervision of cancer research and teaching at the University of Wisconsin and had supervised the cancer clinic at the university hospital. While he had no connection with the diagnosis or treatment of Mrs. Keith, he had examined her medical records prior to testifying. He expressed his opinion that there was no causal connection between the trauma and the cancer, and said that while all the causes of cancer are not known, no connection between trauma and cancer has been established despite the many instances of trauma in everyday life. He said that, in trauma, it has never been found that single, repeated, or multiple blows will so irritate a cell that a cancer is either initiated or promoted. He agreed with Drs. Curreri and Novak that the blow merely brought the tumor to the claimant's attention. He said that the fact that the lump did not rise or increase or decrease in size, as a result of the injury, and the time factor, gave him a strong feeling that it existed prior to the injury. He testified that the rate of growth of the tumor, its appearance and behavior, its response to treatment, and its microscopic picture presented a fairly typical history of a tumor of the soft tissue, and that these tumors are usually very slow growing.

He expressed the belief that the claimant could not have had a hematoma which changed into a myosarcoma and gave two reasons for this belief. First, he knew of no recorded case of hematoma which changed into a cancer despite the billions and billions of hematoma which had occurred in the history of man. Second, he felt that there would have been quite a lot of injury if there had been a hematoma here, considering that, within minutes after the

accident, the claimant noticed the half-dollar-sized lump, but there was no evidence of such injury. He described the trauma in this case as insignificant.

He said that the scientific world was virtually unanimous in its belief that trauma plays no part in cancer. He expressed the opinions that a trauma will not produce a cancer even when a carcinogen is present and that a trauma will not aggravate a pre-existing condition.

We have extended this opinion, perhaps unduly, with the foregoing discussion of the expert testimony in order to demonstrate why it is that we have concluded the award is against the manifest weight of the evidence. The existence of a causal relationship between the injury and the cancer must be found here, if at all, in the opinion testimony of the doctors. But of the five who testified, only one believed there might or could have been any such relationship. The prevailing opinion among the others was that trauma of the type occurring here could not cause cancer, that cancer neither appeared nor developed in the manner testified to by claimant; and they were unanimous in their opinion that the injury neither caused a cancer nor aggravated an existing one. They further agreed that had a hematoma developed at the time of impact, later degenerating into cancer as postulated by Dr. Keenan, there would have been physical evidence thereof within the tumor which was totally absent here.

While resolution of factual matters is the province of the commission to be disturbed by us only in those instances where its findings are against the manifest weight of the evidence, (*Douglass and Co.* v. *Industrial Com.* 35 Ill.2d 100; *Gould National Batteries, Inc.*, v. *Industrial Com.* 34 Ill.2d 151), the employee has the burden of proof (*Canhan Sheet Metal Corp.* v. *Industrial Com.* 31 Ill.2d 325), and the award cannot rest on speculation or conjecture. (*A. O. Smith Corp.* v. *Industrial Com.* 33 Ill.2d 510.) Where, as here, the finding of a causal relationship between the injury

369

and disability is against the manifest weight of the evidence, we have no alternative but to set it aside. *Arbuckle* v. *Industrial Com.* 32 Ill.2d 581.

The judgment of the Winnebago County circuit court is reversed and the award is set aside.

*Judgment reversed; award set aside.*