WILLIAM KENNETH HICKS, Appellant, v. THE INDUSTRIAL COMMISSION et al. (Patrick Quinn et al., Appellees).

Fifth District (Industrial Commission Division)   No. 5—92—0178WC

Opinion filed October 5, 1993.

RARICK, J., concurring in part and dissenting in part.

Harold B. Culley, Jr., of Raleigh, for appellant.

L. Robert Mueller, of Livingstone, Mueller, O'Brien & Davlin, P.C., of Springfield, for appellee.

PRESIDING JUSTICE McCULLOUGH delivered the opinion of the court:

Claimant, William Hicks, sought compensation pursuant to the Illinois Workers' Occupational Diseases Act (Act) (Ill. Rev. Stat. 1989, ch. 48, par. 172.36 *et seq.*) for impairment of his heart and lungs resulting from the inhalation of coal and rock dust. An arbitration hearing was held on September 12, 1989. Hicks testified that he was 59 years old when he left Zeigler Coal Company on January 31, 1981. He had been a miner since 1941, with the exception of a 3½-year tour of duty in the Air Force. While in the Air Force, Hicks obtained his general equivalency diploma (GED). Hicks began experiencing respiratory problems in 1976 or 1977. He experienced shortness of breath upon exertion and had to stop and rest. Sometime in 1980, Hicks sustained a back and knee injury when he fell from a walkway. He left Zeigler in January 1981 because his back, knee, and breathing problems rendered him unable to perform his duties. Hicks subsequently applied for and received social security disability benefits.

Dr. William Charles Houser testified that on July 18, 1984, he examined a chest X ray of Hicks dated June 7, 1982, which revealed a category 1/2 pneumoconiosis. Houser examined Hicks again on April 26, 1988. A chest X ray taken at that time revealed a category 1/0 pneumoconiosis. Houser attributed the difference in ratings to either variations in the technique of the film or the method in which the X rays were taken. Houser's examination also revealed that Hicks had a 10- to 12-year history of shortness of breath on exertion or activity and a cough with sputum on a daily basis. Hicks' pulmonary function studies were normal. Based on his examination, Houser concluded that Hicks was suffering from coal miners' pneumoconiosis caused by his employment and agreed that further exposure would cause progression of the disease and would be injurious to Hicks' health.

On January 26, 1986, Hicks was examined by Dr. Parviz Sanjabi. Hicks' history revealed that he had been suffering from a shortness of

breath, which occurred after exertion or walking a block or two and which had been occurring for the past several years and getting progressively worse. Dr. Sanjabi also reviewed one of Hicks' X rays. Based on the data, Dr. Sanjabi concluded that Hicks was suffering from simple pneumoconiosis caused by exposure to coal dust. Although Hicks' pulmonary function was normal, Dr. Sanjabi indicated that normal pulmonary function was expected with simple pneumoconiosis. Dr. Sanjabi advised against further exposure to coal dust.

Two of Hicks' X rays were examined by Dr. T.R. Marshall, a board-certified radiologist and B-reader. Dr. Marshall testified that both disclosed that Hicks was suffering from the middle stages of simple pneumoconiosis.

Hicks' X rays were reviewed by Dr. Barton Bridges and Dr. Peter Tuteur at Zeigler's request. Dr. Bridges, a radiologist and B-reader, testified that his review of Hicks' X rays revealed no evidence of parenchymal abnormalities consistent with pneumoconiosis but did show some pleural changes which could be compatible with pneumoconiosis. Dr. Bridges agreed that he could not rule out pneumoconiosis. Dr. Tuteur, who is board certified in internal and pulmonary medicine, testified that while Hicks' exposure was sufficient to produce pneumoconiosis in a susceptible host, his X rays showed no signs of an interstitial process consistent with pneumoconiosis. His pulmonary function study and blood gas tests were both normal. Dr. Tuteur found that Hicks had mild chronic bronchitis which could have been caused by exposure to coal dust.

The arbitrator found that claimant suffered from pneumoconiosis as a result of his coal mining employment and made a finding of total and permanent disability. Zeigler sought review before the Industrial Commission (Commission), arguing for the first time that claimant failed to prove disablement within the time period required by section 1(f) of the Act (Ill. Rev. Stat. 1989, ch. 48, par. 172.36(f)). The Commission rejected Zeigler's argument but reduced claimant's award to permanent disablement to the extent of 15% man as a whole. The Commission ruled that because claimant failed to establish the unavailability of work, total disablement was not proved. Both parties then appealed to the circuit court, which ruled that claimant's claim was barred by section 1(f).

On appeal, Hicks first argues that the circuit court erred in ruling that his claim was barred by section 1(f). Specifically, he contends that Zeigler waived its section 1(f) argument by failing to assert it before the arbitrator. The record discloses that Zeigler raised this argument before the Commission. While noting that compliance with

section 1(f) is a statutory condition precedent to recovery, the Commission did not specifically rule on whether Zeigler's section 1(f) argument was waived for failure to assert it before the arbitrator, instead finding that the petitioner had proved disablement within two years of the date of last exposure. The circuit court found that this conclusion was against the manifest weight of the evidence and that Hicks' claim was therefore time-barred by section 1(f) but did not specifically address the issue of whether Zeigler's failure to advance this argument before the arbitrator waived it. A similar argument concerning the failure to raise a section 1(f) argument before the arbitrator was advanced in the recent case of *Monterey Coal Co. v. Industrial Comm'n* (1992), 241 Ill. App. 3d 386, 609 N.E.2d 339. There, we concluded that because the issue was raised before the Commission, it was properly before this court. Likewise, in the present case, Zeigler advanced its section 1(f) argument at the hearing on review before the Commission. Accordingly, the issue is properly before this court.

■ We next address Hicks' argument that section 1(f) of the Act should not be applied to cases involving coal miners' pneumoconiosis because section 1(f) conflicts with section 6(c) of the Act (Ill. Rev. Stat. 1989, ch. 48, par. 172.41(c)), thereby frustrating the effect of the presumption set forth in section 1(d) of the Act (Ill. Rev. Stat. 1989, ch. 48, par. 172.36(d)). Section 1(f) of the Act provides:

> "(f) No compensation shall be payable for or on account of any occupational disease unless disablement, as herein defined, occurs within two years after the last day of the last exposure to the hazards of the disease, except in cases of occupational disease caused by berylliosis or by the inhalation of silica dust or asbestos dust and, in such cases, within 3 years after the last day of the last exposure to the hazards of such disease and except in the case of occupational disease caused by exposure to radiological materials or equipment, and in such case, within 25 years after the last day of last exposure to the hazards of such disease." (Ill. Rev. Stat. 1989, ch. 48, par. 172.36(f).)

Section 6(c) of the Act provides in pertinent part:

> "Effective July 1, 1973[,] in cases of disability caused by coal miners['] pneumoconiosis unless application for compensation is filed with the Commission within 5 years after the employee was last exposed where no compensation has been paid, or within 5 years after the last payment of compensation where any has been paid, the right to file such application shall be barred." (Ill. Rev. Stat. 1989, ch. 48, par. 172.41(c).)

The circuit court, relying on *Goodson v. Industrial Comm'n* (1989), 190 Ill. App. 3d 16, 545 N.E.2d 975, ruled that compliance with both sections 1(f) and 6(c) of the Act was required.

In *Goodson*, the court addressed the applicability of sections 1(f) and 6(c) to a claim for death benefits by a surviving spouse. The specific paragraph of section 6(c) in question in *Goodson* at the time of decedent's death required that in cases of death occurring within 25 years from last exposure to radiological materials or equipment, application for compensation must be filed within three years of the date of death. (Ill. Rev. Stat. 1977, ch. 48, par. 172.41(c).) ("Asbestos" was added to this fifth paragraph of section 6(c) of the Act by Public Act 83—1125, §2 (1984 Ill. Laws 212, 255).) Relying on the principle of statutory construction that "[d]ifferent sections of the same statute should be considered as *in pari materia* and should be construed so as to avoid an illogical result" (*Goodson*, 190 Ill. App. 3d at 18, 545 N.E.2d at 976), the court held that sections 1(f) and 6(c) should be read together and that while the surviving spouse had three years from the date of death to file her claim, proof that disablement occurred within three years of the decedent's last exposure to asbestos was a condition precedent to recovery (*Goodson*, 190 Ill. App. 3d at 19-20, 545 N.E.2d at 976-77).

In the present case, the claimant argued that section 6(c) provided a five-year time period for cases involving coal miners' pneumoconiosis. Section 6(c), as it pertains to a claimant seeking benefits for coal miners' pneumoconiosis, permits the filing of an application within five years of last exposure but requires that the employee still prove, under section 1(f), that disability arose "within two years *** of *** last exposure." (Ill. Rev. Stat. 1989, ch. 48, par. 172.36(f).) We find that the same reasoning employed in *Goodson* is equally applicable to the case at bar.

■ Hicks also argues that strict application of section 1(f) frustrates the effect of the principles created by section 1(d). Section 1(d) of the Act provides in pertinent part as follows:

"If a miner who is suffering or suffered from pneumoconiosis was employed for 10 years or more in one or more coal mines there shall, effective July 1, 1973[,] be a rebuttable presumption that his or her pneumoconiosis arose out of such employment." (Ill. Rev. Stat. 1989, ch. 48, par. 172.36(d).)

He maintains that the section 1(d) presumption that the disease is caused by employment logically includes a concomitant presumption that the disease, even if latent, was present at the time the employment relationship ended. He further maintains that this conflict can

be resolved by application of the rules of statutory construction which state that specific statutes control over general ones and that the statutes most recently enacted prevail over older ones. We are not persuaded by Hicks' argument. While section 1(d) creates a rebuttable presumption of a *causal* relationship between the claimant's pneumoconiosis and his employment, it remains claimant's burden to prove that he was disabled within two years of the date of his last exposure as a result of having contracted pneumoconiosis.

We next address Hicks' contention that, assuming section 1(f) is applicable, the Commission correctly found that the evidence established that Hicks' disablement occurred within two years of the date of last exposure. Both the arbitrator and the Commission found that the weight of the evidence demonstrated that Hicks suffered from pneumoconiosis, based upon section 1(d) of the Act Hicks was entitled to a rebuttable presumption that his pneumoconiosis arose from his employment at Zeigler, and Zeigler failed to produce evidence sufficient to rebut this presumption. Both the arbitrator and the Commission correctly found that Hicks was entitled to this presumption.

The basis of the circuit court's ruling that the Commission's decision was against the manifest weight of the evidence was that Hicks failed to prove disablement within the two-year time period required by section 1(f). Specifically, the circuit court found that given the lack of medical evidence originating during the two-year time frame provided by the statute, and that Hicks made no complaints to a doctor during the two years following cessation of employment, there was no credible evidence of disablement during the two-year period. In claims arising under the Act:

> "It is the function of the Commission to resolve disputed questions of fact, including those of causal connection, to decide which of conflicting medical views is to be accepted and to draw permissible inferences. [Citation.] In the presence of conflicting medical opinion, the Commission's determination is given substantial deference and will be upheld unless it is contrary to the manifest weight of the evidence. [Citation.] The Commission is the judge of the credibility of witnesses. [Citation.] It is the peculiar province of the Commission not only to determine the credibility of witnesses but also to weigh the testimony and to determine the weight to be given to the evidence. [Citations.] A reviewing court should neither overturn the Commission's findings simply because a different inference could be drawn nor otherwise substitute its judgment for that

of the Commission." (*Old Ben Coal Co. v. Industrial Comm'n* (1991), 217 Ill. App. 3d 70, 83-84, 576 N.E.2d 890, 899.)

"The manifest weight of the evidence is that which is the clearly evident, plain and indisputable weight of the evidence. In order for a finding to be contrary to the manifest weight of the evidence, an opposite conclusion must be clearly apparent." (*Caterpillar, Inc. v. Industrial Comm'n* (1992), 228 Ill. App. 3d 288, 291, 591 N.E.2d 894, 896.) Initially, we note that Dr. Houser testified that one of the X rays he examined was dated June 7, 1982, the year following Hicks' departure from Zeigler. Houser testified that this X ray revealed a category 1/2 pneumoconiosis. There is, therefore, evidence beyond Hicks' testimony of pneumoconiosis which arose during the two-year period. Further, while the fact that a claimant fails to seek medical treatment during the two-year period is a factor to be considered, it is not dispositive. The opinions of medical experts based upon examinations occurring after the two-year period may nevertheless satisfy section 1(f) if such testimony indicates that the disabling condition arose during the two-year period. See *Monterey Coal Co. v. Industrial Comm'n* (1992), 241 Ill. App. 3d 386, 609 N.E.2d 339.

Hicks testified that he began experiencing respiratory problems in 1976 or 1977. Both Dr. Houser and Dr. Sanjabi testified that Hicks' pneumoconiosis was a result of his employment, and both they and Dr. Marshall testified that further exposure to coal dust would cause further injury. This testimony sufficiently establishes that Hicks was disabled as of the time he left employment at Zeigler. Dr. Bridges testified that he could not rule out pneumoconiosis, and while Dr. Tuteur diagnosed Hicks' condition as bronchitis caused by exposure to coal dust, he agreed that a person with pneumoconiosis should avoid further exposure to coal dust.

In the present case, the Commission based its decision on Hicks' unrebutted testimony that he had been having breathing problems since 1976 or 1977 and Dr. Sanjabi's diagnosis of pneumoconiosis. Dr. Houser and Dr. Marshall also diagnosed Hicks as having pneumoconiosis. These findings conflict with the findings of Dr. Bridges and Dr. Tuteur, but resolution of conflicting medical testimony is the province of the Commission. Having reviewed the record, we conclude that the Commission's finding that Hicks became disabled within two years following the date of his last employment was not against the manifest weight of the evidence, and the circuit court erred in concluding otherwise.

■ Finally, we address Hicks' contention that the Commission erred in modifying the arbitrator's award based upon its finding that

he failed to meet his burden of showing permanent and total disability. Specifically, Hicks maintains that the Commission erred in holding that he failed to demonstrate the unavailability of work to a person in his condition because he made no efforts to seek employment. Hicks contends that unavailability of work can be shown by either unsuccessful attempts to find work or by proof indicating that because of one's age, education, and experience he is unable to perform any services for which a reasonably stable job market exists.

> "A person is totally disabled when he cannot perform services except those that are so limited in quantity, dependability or quality that there is no reasonably stable market for them. \*\*\*
>
> A claimant has the burden of proving all the elements of his case, including the extent and permanency of the injury, in order to recover benefits \*\*\*. \*\*\*
>
> \* \* \*
>
> If a claimant's physical disability is limited in nature so that he is not obviously unemployable, then it is not unreasonable that the burden be upon him to establish the unavailability of work to a person in his circumstances. This burden can be met by showing that reasonable efforts were made to secure suitable employment—the kind of employment that can be performed by a person in his circumstances." *A.M.T.C. of Illinois, Inc. v. Industrial Comm'n* (1979), 77 Ill. 2d 482, 487-90, 397 N.E.2d 804, 806-07.

See also *E.R. Moore Co. v. Industrial Comm'n* (1978), 71 Ill. 2d 353, 376 N.E.2d 206.

This burden may also be met by a showing that, in light of claimant's age, experience, training, and education, he is unable to perform any but the most menial tasks for which no stable market exists. *Interlake, Inc. v. Industrial Comm'n* (1981), 86 Ill. 2d 168, 178, 427 N.E.2d 103, 108, citing *Valley Mould & Iron Co. v. Industrial Comm'n* (1981), 84 Ill. 2d 538, 419 N.E.2d 1159.

In the present case, the arbitrator found only that claimant could not continue work as a coal miner. None of the medical testimony shows that the claimant was totally permanently disabled. The claimant, himself, testified in answer to the question, "If it hadn't been for your back injury and your knee injury, would you have been able to continue your job?", "Yes, no problem." The record is also clear that claimant made no attempt to find work and was receiving social security disability benefits for reasons unrelated to the industrial accident.

The Commission correctly found that "[claimant's] physical disability is limited in nature so that he is not obviously unemployable." He "has not made any efforts to seek employment."

The only evidence presented was that claimant finished 10 years of education, completed his GED in the military service, and worked as a coal miner all his life.

Claimant has not shown that, because of the industrial accident proved, he is so handicapped that he will not be regularly employed in the labor market. The supreme court's statement in *A.M.T.C.*, "[W]e are unable to ascertain from the record what type of work the claimant is capable of performing besides that of a mover, nor can we ascertain his training or capabilities," applies in this case. *A.M.T.C.*, 77 Ill. 2d at 490, 397 N.E.2d at 807.

For the foregoing reasons, the judgment of the circuit court of Franklin County is reversed, and the decision of the Commission is reinstated.

Reversed; Industrial Commission decision reinstated.

RAKOWSKI, WOODWARD, and STOUDER, JJ., concur.

JUSTICE RARICK, concurring in part and dissenting in part:

I agree with the majority with respect to the interpretation and applicability of sections 1(f) and 6(c) of the Act. I likewise agree with the majority's conclusion that the Commission's finding that Hicks became disabled within two years following the date of last exposure was not against the manifest weight of the evidence and that the circuit court erred concluding otherwise. My disagreement with the majority's opinion is with respect to the reinstatement of the Commission's decision reducing Hicks' award of permanent disability to 15% man as a whole.

As the majority notes, the Commission's decision was based upon its finding that Hicks failed to prove total disablement because he failed to establish the unavailability of work. The majority correctly notes that it is the claimant's burden to prove the permanency of his injury, and that where a claimant's physical disability is so limited in nature that he is not obviously unemployable the burden is on him to establish the unavailability of work to a person in his circumstances. The majority also correctly notes that this burden may be met by a showing that, in light of claimant's age, experience, training, and education, he is unable to perform any but the most menial tasks for which no stable market exists. I agree with the majority that the

Commission correctly found that Hicks' disablement was so limited in nature that he is not obviously unemployable, and the record supports the Commission's conclusion that Hicks made no effort to seek employment. From reading the Commission's decision, however, it is apparent that the Commission focused solely on Hicks' failure to seek employment and did not consider whether his age, experience, training, and education rendered him unable to perform any tasks for which a stable job market existed when it determined that Hicks failed to prove the unavailability of work. The effect of this was to erroneously increase Hicks' burden of proof. (See *Valley Mould & Iron Co. v. Industrial Comm'n* (1981), 84 Ill. 2d 538, 419 N.E.2d 1159, citing *Sterling Steel Casting Co. v. Industrial Comm'n* (1979), 74 Ill. 2d 273, 384 N.E.2d 1326; *E.R. Moore Co. v. Industrial Comm'n* (1978), 71 Ill. 2d 353, 376 N.E.2d 206.) For this reason, I would remand the cause to the Commission.