ROBERT FORSYTHE, Appellee and Separate Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Freeman United Coal Mining Company, Appellant and Separate Appellee).—ROBERT FORSYTHE, Appellee, v. THE INDUSTRIAL COMMISSION *et al.* (Freeman United Coal Mining Company, Appellant).

Fifth District (Industrial Commission Division)   No. 5—93—0135WC

Opinion filed June 16, 1994.

464

Kenneth F. Werts and Nancy R. Kuhnke, both of Craig & Craig, of Mt. Vernon, for Freeman United Coal Mining Company.

Harold B. Culley, Jr., of Culley & Wissore, of Raleigh, for Robert Forsythe.

JUSTICE SLATER delivered the opinion of the court:

Claimant, Robert Forsythe, filed an application for adjustment of claim pursuant to the Workers' Occupational Diseases Act (the Act) (Ill. Rev. Stat. 1981, ch. 48, par. 172.36 *et seq.*) on September 27, 1982. The arbitrator found that claimant was permanently partially disabled to the extent of $17^1/2\%$ as a result of pneumoconiosis. Both claimant and his employer, Freeman United Coal Mining Company, filed petitions for review. The Industrial Commission (the Commission) reversed the decision of the arbitrator, finding that claimant failed to prove that he sustained disablement due to an occupational disease within the statutory two-year period under section 1(f) of the Act (Ill. Rev. Stat. 1981, ch. 48, par. 172.36(f)). Claimant appealed the decision of the Commission to the circuit court as case number 90—MR—31. Judge John Lundmark reversed the Commission and found, *inter alia*, that the Commission's finding that claimant had failed to prove that disablement occurred within two years of the date of last exposure to the hazards of an occupational disease was against the manifest weight of the evidence. The court also found that a claim based on coal workers' pneumoconiosis was not barred by section 1(f) but was instead subject to the five-year limitations provision contained in section 6(c) of the Act (Ill. Rev. Stat. 1981, ch. 48, par. 172.41(c)). The court remanded the cause to the Commission to determine the amount of disability, if any, attributable to pneumoconiosis. On remand, the Commission found that claimant had sustained permanent partial disability to the extent of 25% as a result of pneumoconiosis. Both claimant and the employer appealed the Commission's decision to the circuit court as case number 92—MR—19. Judge Robert Hill reversed the Commission's decision and found that claimant had failed to prove any disability due to an

occupational disease. The employer now appeals from the order which Judge Lundmark rendered in case number 90—MR—31 which reversed the Commission's initial decision. Claimant appeals from the order of Judge Hill in case number 92—MR—19 which reversed the Commission's decision after remandment. These appeals were consolidated by this court. The issues presented by the employer on appeal are: (1) whether the circuit court erred in reversing the Commission's finding that section 1(f) of the Act applied to a claim based on pneumoconiosis; and (2) whether the court's reversal of the Commission's determination that the claimant failed to prove disablement within two years pursuant to section 1(f) of the Act was erroneous. The issues presented by the claimant on appeal are: (1) whether the circuit court erred in reversing the Commission's decision after remandment which had awarded the claimant permanent partial disability to the extent of 25%; and (2) whether the circuit court's order was contrary to the doctrine of "law of the case."

Claimant was born on November 10, 1909. Claimant was 78 years old at the time of arbitration, and he was 68 on November 12, 1977, his last day of work. Claimant began working as a coal miner in 1947 at Freeman's No. 3 mine where he worked as a laborer, truck driver, and road builder. During this time he was exposed to rock dust. In 1951 he was transferred to a job where he ran a tripper belt filling silos with coal. The coal would fall off a tripper onto a track and into the silos making an updraft of dust. Claimant was also required to sweep and clean up the floors. In addition, he had to unplug the feeders at the bottom of the silo by using a crow bar and hammer to free the jam. This was very dusty work, and while he tried to wear a respirator, the device made it difficult to breathe. In 1957 claimant became a portal attendant in charge of a console board which operated a number of pieces of equipment. A slope belt brought the coal out from the bottom of the mine onto an apron feeder and then to a shaker and a tiler feeder where the coal was screened. This process created quite a bit of dust.

Beginning in 1972 or 1973, claimant experienced shortness of breath when exerting himself or climbing stairs while at work. On November 12, 1977, claimant had a heart attack while at work. Before the heart attack, claimant had never experienced chest pains, and his only problem was shortness of breath. Claimant has not worked since his heart attack. In 1978 or 1979, claimant was hospitalized for shortness of breath and dizziness. He was again hospitalized in 1983 with an aneurysm in his abdomen. Presently, claimant does not engage in physical activity and can only walk about one block before becoming short of breath.

Claimant smoked one-half of a pack of cigarettes a day for about 30 years. He quit after he had the heart attack. Claimant's personal physician is Dr. Khan, whom he began seeing following the heart attack.

Thomas J. Smith worked at Freeman's No. 3 mine for approximately 35 years. For three years Smith worked in a position where he was able to observe claimant in his job as portal attendant. According to Smith, the jobsite was dusty due to the coal being poured over the shakers. Smith observed claimant become short of breath while going up and down stairs.

Dr. Saeed Khan testified on behalf of claimant. Dr. Khan is board certified in internal medicine, and his practice consists of internal medicine, cardiology, and pulmonary disease. Dr. Khan began seeing the claimant after his heart attack in November of 1977. He sees claimant every two to three months. Dr. Khan noted that claimant has bilateral dry crepitations and wheezing in his lungs. An X ray taken in March of 1986 revealed bilateral pulmonary fibrosis, which Dr. Kahn described as scarring due to occupational disease. Arterial blood gas studies showed diminished levels of $PO_2$ and $PCO_2$, which is consistent with black lung disease and chronic bronchitis. Claimant's bronchitis was likely due to smoking. Pulmonary function studies done in March of 1986 were abnormal and could be consistent with pneumoconiosis. Claimant told Dr. Kahn that he had been experiencing slight shortness of breath and a productive cough for several years prior to 1977.

In Dr. Kahn's opinion, claimant has pneumoconiosis, heart disease, and cor pulmonale, which is congestive heart failure secondary to pneumoconiosis, making him totally disabled. Claimant was initially unable to return to work due to his heart attack, although he later experienced increased shortness of breath. By 1981, claimant had developed symptoms of congestive heart failure and cor pulmonale. Claimant's symptoms of cor pulmonale were swelling of the feet, increased shortness of breath, rapid heart rate, and increased cough. Although breathlessness on exertion can develop after a heart attack, Dr. Kahn stated that this occurs if the patient goes into heart failure after the heart attack, which was not the case with claimant.

Due to claimant's age, heart condition and lung disease, Dr. Khan concluded that it was unlikely that claimant could be employed. In Dr. Khan's opinion, 50% of claimant's impairment was due to heart disease and 50% was due to pneumoconiosis. Coal workers' pneumoconiosis is a contributing factor in both claimant's lung disease and his cor pulmonale. Continued exposure to coal dust would aggravate these conditions.

Dr. James Vest is a pulmonary physician who is board certified in both pulmonary and internal medicine. Dr. Vest examined claimant on April 19, 1984. At that time, claimant was 74 years old. Claimant related an 8- to 10-year history of shortness of breath that had increased in both nature and severity. He was able to walk approximately one block and climb approximately a half of a flight of stairs. Claimant's X rays revealed fibrosis, or scarring of the lungs. Dr. Vest concluded that claimant had some evidence of coal workers' pneumoconiosis which resulted in some evidence of impairment of his pulmonary status. His findings were based on claimant's occupational history, physical findings, and chest X ray. Dr. Vest explained that a heart attack could cause shortness of breath if there is congestive heart failure, but he saw no evidence of congestive heart failure in claimant. He also found no impairment directly related to claimant's heart attack, nor did he find any evidence of cor pulmonale. Dr. Vest stated that it would be very difficult for claimant to be engaged in full-time employment and that pneumoconiosis was a contributing factor in his overall disability. Dr. Vest would recommend that claimant not return to coal mine employment for a number of reasons, including his age, myocardial infarction, and pulmonary status.

Dr. Parviz Sanjabi was called as a witness by the employer. Dr. Sanjabi's clinical practice is focused on internal medicine and pulmonary diseases. Dr. Sanjabi first saw claimant on March 29, 1978, when he was referred by the United States Department of Labor for an evaluation of the presence or absence of pneumoconiosis. At that time claimant was complaining of shortness of breath when walking up inclines or stairs. Dr. Sanjabi conducted arterial blood gas studies and pulmonary function studies, and they were within the normal range. Dr. Sanjabi's diagnosis was coronary artery disease, history of myocardial infarction, and mild simple coal workers' pneumoconiosis. The diagnosis of coal workers' pneumoconiosis was based primarily on the history of exposure and X-ray findings. Dr. Sanjabi testified that in 1978 he did not expect any significant disabling condition with regard to the respiratory function of claimant. His opinion at that time was that claimant had simple pneumoconiosis, but he did not have any impairment as a result.

Dr. Sanjabi again examined claimant in March of 1987. Claimant's chief complaints were shortness of breath and a reduction of exercise tolerance. He also complained of chest pain. Claimant indicated that he had shortness of breath for the past 10 years and it had progressively worsened. Dr. Sanjabi testified that claimant's coronary artery disease and heart problems were the source of his chest

pain. He also testified that shortness of breath and reduction of exercise tolerance are common symptoms of post-myocardial infarction patients. Arterial blood gas studies performed at that time were within normal limits. X-ray results showed the presence of mild early pneumoconiotic changes, although those findings were characterized as fairly minimal. Pulmonary function studies were in keeping with a slight obstructive condition.

Dr. Sanjabi testified that claimant's condition in November of 1987 was basically the same as at the time of the examination in 1978. Claimant had a history of coronary artery disease, a history of smoking and probable tobacco-induced bronchitis, and mild simple pneumoconiosis. Dr. Sanjabi testified that he considered whether coal workers' pneumoconiosis contributed to claimant's reduction of activities or disability, and it was his opinion that the pneumoconiosis was not physiologically significant and did not cause impairment measurable by common tests.

Dr. Sanjabi concluded that claimant's cardiovascular condition played the major part in his symptomatic presentation. In addition, Dr. Sanjabi testified that the extent of claimant's pneumoconiosis was not significant enough to affect his heart condition. Finally, Dr. Sanjabi agreed that continued inhalation of coal dust would aggravate a condition of pneumoconiosis, and he would recommend that claimant should avoid working in dusty environments.

As indicated earlier, the arbitrator awarded benefits based upon permanent and partial disability to the extent of 17 1/2%. The Commission reversed the arbitrator, finding that claimant had failed to prove disablement within two years from the date of last exposure as required by section 1(f) of the Act. The circuit court, by order of Judge Lundmark, reversed the Commission, finding that section 1(f) did not apply and, if it did, the Commission's decision of no timely disablement was contrary to the manifest weight of the evidence. Upon remand, the Commission found that claimant suffered disablement to the extent of 25% of the man as a whole. The circuit court then, by order of Judge Hill, found that claimant sustained no compensable disability and reversed the Commission's award. These appeals followed.

■ We first consider whether the circuit court erred in reversing the Commission's decision that compensation was barred by section 1(f) of the Act because claimant failed to prove that disablement occurred within two years of the date of his last exposure to the hazards of an occupational disease. The circuit court held that claims based on pneumoconiosis were not subject to section 1(f) but were instead governed by the five-year limitations provision of section 6(c).

As the parties recognize, this court's decision in *Plasters v. Industrial Comm'n* (1993), 246 Ill. App. 3d 1, 615 N.E.2d 1145, is dispositive. In *Plasters* we held that section 1(f) *is* applicable to claims based on coal workers' pneumoconiosis. Therefore, the circuit court's contrary finding was erroneous. Nevertheless, we must also consider whether the court correctly determined that the Commission's finding that claimant failed to prove disablement within two years under section 1(f) was against the manifest weight of the evidence.

Section 1(f) of the Act provides:

"No compensation shall be payable for or on account of any occupational disease *unless disablement, as herein defined, occurs within two years after the last day of the last exposure to the hazards of the disease* \*\*\*." Ill. Rev. Stat. 1981, ch. 48, par. 172.36(f).

Disablement is defined as:

"[A]n impairment or partial impairment, temporary or permanent, in the function of the body or any of the members of the body, or the event of becoming disabled from earning full wages at the work in which the employee was engaged when last exposed to the hazards of the occupational disease by the employer from whom he or she claims compensation, or equal wages in other suitable employment; and 'disability' means the state of being so incapacitated." Ill. Rev. Stat. 1981, ch. 48, par. 172.36(e).

Claimant contends that sufficient evidence of impairment was presented by his testimony of shortness of breath which began in 1972 or 1973. Claimant also points to Dr. Khan's testimony that although claimant's heart attack was the main cause of his disability between 1977 and 1981, he also suffered from chronic bronchitis and shortness of breath. Claimant argues that this evidence supports a finding that he was suffering from at least partial impairment due to pneumoconiosis within two years of last exposure.

"Whether a claimant has provided sufficient evidence of disablement is a question of fact for the Commission to determine, and its decision will only be reversed if it is against the manifest weight of the evidence." (*Plasters v. Industrial Comm'n* (1993), 246 Ill. App. 3d 1, 8, 615 N.E.2d 1145, 1150.) A finding is not against the manifest weight of the evidence unless an opposite conclusion is clearly evident. (*Water Pipe Extension, Bureau of Engineering, Laborers Local 1092 v. City of Chicago* (1990), 195 Ill. App. 3d 50, 551 N.E.2d 1324; *Gary-Wheaton Bank v. Meyer* (1984), 130 Ill. App. 3d 87, 473 N.E.2d 548.) Our supreme court has stated that the "interpretation of the testimony of medical witnesses is particularly within the province of the Industrial Commission." (*A.O. Smith Corp. v. Industrial*

*Comm'n* (1972), 51 Ill. 2d 533, 536-37, 283 N.E.2d 875, 877.) A reviewing court cannot disregard permissible inferences drawn by the Commission merely because different inferences may also be drawn from the same facts (*Martin v. Industrial Comm'n* (1992), 227 Ill. App. 3d 217, 591 N.E.2d 108); if the undisputed facts permit an inference either way, then the Commission alone is empowered to draw the inference and its decision as to the weight of the evidence will not be disturbed on review (*Morgan Cab Co. v. Industrial Comm'n* (1975), 60 Ill. 2d 92, 324 N.E.2d 425). Finally, it is the province of the Commission to weigh and resolve any conflicts in the testimony and to choose between conflicting inferences. *Dexheimer v. Industrial Comm'n* (1990), 202 Ill. App. 3d 437, 559 N.E.2d 1034.

■ In this case, there was evidence that claimant had experienced shortness of breath prior to his heart attack in 1977. There was also evidence that claimant's breathing problems increased after 1977, although whether this was caused by the heart condition or by pneumoconiosis was disputed. It is clear, however, that Dr. Sanjabi, who examined the claimant $4^1/2$ months after the heart attack, found that claimant's mild pneumoconiosis did not result in any functional impairment. Furthermore, the arterial blood gas studies and pulmonary function studies were within normal range. When Dr. Sanjabi again examined claimant in 1987, he found that his condition was largely unchanged. According to Dr. Sanjabi, claimant's pneumoconiosis was not physiologically significant. Based on the evidence presented, we are unable to conclude that the Commission's decision in this regard was against the manifest weight of the evidence.

Claimant also contends, however, that "disablement" need not be based solely on functional impairment. Claimant notes that section 1(e) defines disablement in the alternative, and he maintains that his disablement consists of "the event of becoming disabled from earning full wages at the work in which the employee was engaged when last exposed to the hazards of the occupational disease" (Ill. Rev. Stat. 1981, ch. 48, par. 172.36(e)). Claimant argues that the three doctors agreed that he suffered from pneumoconiosis, and they also agreed that further exposure to coal dust would aggravate his condition. Therefore, claimant contends, the permanent risk of additional health problems from exposure to coal dust constitutes disablement.

We find that, under the facts of this case, claimant's argument is misplaced. "An employee seeking compensation must show not only that he contracted an occupational disease *** but also that he was disabled from earning full wages at the work in which he was last exposed." (*Ferguson & Lange Foundries, Inc. v. Industrial Comm'n* (1942), 380 Ill. 185, 192-93, 43 N.E.2d 684, 687.) Section 1(e) defines

disablement as impairment in the function of the body or the *event* of becoming disabled from earning full wages. The event which caused the claimant to stop working in this case was a heart attack, not pneumoconiosis. Dr. Khan testified that claimant was unable to return to work because of his heart condition, and Dr. Sanjabi testified that it was claimant's cardiovascular condition, rather than pneumoconiosis, which caused his disability. Under the circumstances, the Commission could reasonably draw an inference that no disablement due to pneumoconiosis occurred within two years of the date claimant stopped working. We find, therefore, that the circuit court erred in reversing the Commission in case number 90—MR—31.

In view of our finding, we need not address the issues presented in case number 92—MR—19, which arose after the cause was remanded to the Commission.

In case number 90—MR—31 the judgment of the circuit court is reversed and the Commission's decision is reinstated.

Reversed.

McCULLOUGH, P.J., and RAKOWSKI, WOODWARD, and RARICK, JJ., concur.