FREEMAN UNITED COAL MINING COMPANY, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Joe Griffith, Appellee).

Fifth District   No. 5—96—0242WC

Opinion filed March 18, 1997.

RARICK, J., concurring in part and dissenting in part.

Kenneth F. Werts and Henry P. Villani, both of Craig & Craig, of Mt. Vernon, for appellant.

Harold B. Culley, Jr., of Culley & Wissore, of Raleigh, for appellee.

JUSTICE RAKOWSKI delivered the opinion of the court:

Joe Griffith (claimant) filed an application for adjustment of claim pursuant to the Workers' Occupational Diseases Act (the Act) (820 ILCS 310/1 *et seq.* (West 1994)) for injuries allegedly sustained to his lungs arising out of and in the course of his employment as a coal miner. The arbitrator awarded benefits. The Industrial Commission (Commission) reversed, finding that claimant's condition of ill-being was solely related to his history of smoking. The circuit court reversed. For the reasons that follow, we conclude the Commission's decision is not against the manifest weight of the evidence. Therefore, we reverse the judgment of the circuit court and reinstate the Commission's decision.

## FACTS

Claimant had worked 25 years in the coal mine industry, where he was continually exposed to coal dust. In 1976, claimant began working for Freeman United Coal Mining Company (employer) as a roof bolter, a laborer, and a mine repairman, where he was also exposed to coal dust. Claimant was laid off work in December 1982 when the coal mine closed, although he remained on the panel because he was willing to continue work. After his birthday in December 1982, claimant decided to take retirement and has not looked for worked since then. At the time of arbitration (1991), claimant was 64 years old and unemployed.

Claimant first noticed breathing problems in 1970 or 1971, while working in the mines as a belt shoveler. Since then, his breathing problems have worsened. At arbitration, claimant testified that he experiences shortness of breath when mowing his lawn or climbing stairs, and he can no longer hunt or garden. He can only walk about one block before becoming short of breath and he must take medication three times daily. Claimant smoked one-half of a pack of cigarettes per day for about 50 years. He stopped smoking in August 1990 after he had a heart attack.

In December 1984, claimant was examined by Dr. Saeed Khan, who is board certified in internal medicine. Claimant told Dr. Khan that he could not walk more than one block or climb stairs without getting short of breath. Claimant said his shortness of breath worsened over time and he experiences an excessive cough. Claimant also told Dr. Kahn that he retired from the coal mines because of breathing problems. An initial physical examination showed pulmonary hypertension, dry crepitations, and bilateral rhonchi (rattling sound). Dr. Kahn's initial diagnosis was chronic pulmonary disease, emphysema, and coal workers' pneumoconiosis.

Thereafter, Dr. Kahn reviewed a chest X ray taken on April 30, 1985, which showed moderate hyperinflation and multiple small parenchymal calcifications suggesting granulomatous disease, which is consistent with emphysema and coal workers' pneumoconiosis. The initial pulmonary function study and blood gas tests performed by Dr. Kahn were abnormal and showed obstructive pulmonary disease, which is also consistent with emphysema and coal workers' pneumoconiosis. Dr. Kahn performed another pulmonary function study on June 17, 1985, and found the results were fairly good.

Dr. Kahn found that claimant has emphysema, chronic bronchitis, and coal workers' pneumoconiosis. In his opinion, the pneumoconiosis was caused by claimant's exposure to coal dust for 25 years, while his emphysema and chronic bronchitis were caused by both his smoking and coal dust exposure. Dr. Khan admitted, however, that claimant's history of smoking could account for all of his symptoms.

On June 24, 1988, claimant was examined by Dr. William Houser, who is board certified in internal medicine and pulmonary disease. Dr. Houser noted that claimant had occasional coughing episodes and would get short of breath when walking and climbing stairs. He opined that claimant has pneumoconiosis, which was caused by coal mining, and chronic obstructive pulmonary disease, which was caused by both smoking and exposure to dust. Dr. Houser stated that claimant cannot have further exposure to coal dust without endangering his health, but that claimant is capable of performing all but the most physically demanding jobs.

On June 17, 1985, claimant was examined by Dr. Darryl Sugar, who is board certified in both internal medicine and nephrology (kidney disease). Dr. Sugar noted a mild decrease in breath sounds bilaterally with scattered wheeze, but the examination was otherwise unremarkable. A chest X ray revealed multiple bilateral parenchymal calcifications and evidence of old histoplasmosis, but no evidence of pneumoconiosis. Also, pulmonary function and arterial blood gas studies were within normal range. Dr. Sugar concluded that claim-

ant has chronic bronchitis secondary to smoking, but he does not have pneumoconiosis. He opined that if claimant stopped smoking his symptoms would improve and enable him to return to work at the coal mines.

On July 26, 1988, Dr. Tuteur examined claimant, took a chest X ray, and conducted pulmonary function testing. Dr. Tuteur is board certified in internal medicine and pulmonary medicine. He viewed the X ray as normal, except for some calcifications that are consistent with healed infections like histoplasmosis. The results of the pulmonary function test and arterial blood gas analysis were normal, and claimant's lung volumes showed no restrictive defect. Dr. Tuteur concluded that claimant "does not have clinically significant, physiologically significant, or radiographically significant coal workers' pneumoconiosis," and that any pulmonary impairment was caused by smoking. At best, he stated it is "remotely possible" that claimant could have microscopic evidence of pneumoconiosis, and in that event, he recommended that claimant not be further exposed to coal mine dust.

Based on this evidence, the arbitrator found claimant suffered from pneumoconiosis that was causally related to and arose out of and in the course of his coal mining employment. The arbitrator awarded claimant permanent partial disability benefits to the extent of 3% loss of use of the person as a whole. The Commission reversed. The Commission expressly assigned greater weight to the opinions of Dr. Tuteur and Dr. Sugar than to the opinion of Dr. Kahn and found that claimant does not have pneumoconiosis and that claimant's condition is related solely to his history of smoking.

One commissioner dissented on the basis that claimant showed by a preponderance of evidence that he has a functional impairment that was caused at least in part by his occupation as a coal miner. On review to the circuit court of Williamson County, Judge Murphy adopted the dissenting commissioner's view and reversed the decision of the Commission. The court stated that the evidence in this matter gives rise to the rebuttable presumption that claimant suffers from pneumoconiosis as a result of his coal mining employment and that employer has not rebutted this presumption. The cause was remanded to the Commission for findings consistent with the court's decision. On remand, the Commission, as required by the circuit court, adopted the medical findings and conclusions of Dr. Khan and Dr. Houser and held in favor of claimant "on all disputed issues as set forth in Commissioner Jones' dissent." Consequently, the Commission found claimant permanently and totally disabled and awarded him benefits of $326.53 per week for life under section 8(f) of

the Act. Judge Baker of the circuit court of Franklin County confirmed the Commission's award.

## ANALYSIS

### A. Presumption of Section 1(d) of the Act

■ Initially, we assign error to the circuit court's application of section 1(d) of the Act, which provides in part: "If a miner who is suffering or suffered from pneumoconiosis was employed for 10 years or more in one or more coal mines there shall, effective July 1, 1973[,] be a rebuttable presumption that his or her pneumoconiosis arose out of such employment." 820 ILCS 310/1(d) (West 1994). The circuit court's decision on appeal states: "Pursuant to 820 ILCS 310/1(d) this Court finds that the evidence in this matter gives rise to the *rebuttable presumption that Petitioner is suffering from pneumoconiosis* as a result of his coal mine employment. Respondent has not rebutted this presumption." (Emphasis added.)

The court's statement is incorrect to the extent that it employs the wrong presumption. Pursuant to section 1(d) of the Act, when the disease of pneumoconiosis is proven and present, there is a presumption that the pneumoconiosis arose out of employment. There is no presumption of the disease itself. *Hicks v. Industrial Comm'n*, 251 Ill. App. 3d 320, 326 (1993). In this case, the threshold issue before the Commission was whether claimant actually had pneumoconiosis. Having determined that he did not, there was no basis for the presumption to come into play. As such, the proper issue before the circuit court was whether the Commission's findings that claimant did not have pneumoconiosis and that any pulmonary impairment was the result of smoking were against the manifest weight of the evidence.

### B. Manifest Weight of the Evidence

■ Before a reviewing court may overturn a decision of the Commission, it must find the award was contrary to law or that the Commission's factual determinations were against the manifest weight of the evidence. *Fitts v. Industrial Comm'n*, 172 Ill. 2d 303, 307 (1996). Whether a claimant has provided sufficient evidence of disablement and sufficient evidence of causation is a question of fact for the Commission, and its decision will be reversed only if it is against the manifest weight of the evidence. *Plasters v. Industrial Comm'n*, 246 Ill. App. 3d 1, 8 (1993); *Freeman United Coal Mining Co. v. Industrial Comm'n*, 224 Ill. App. 3d 778, 790 (1992). A finding is not against the manifest weight of the evidence unless an opposite conclusion is clearly apparent. *Freeman United Coal Mining Co. v. Industrial Comm'n*, 263 Ill. App. 3d 478, 484 (1994).

■ It is the province of the Commission to judge the credibility of witnesses, draw reasonable inferences from the testimony, and determine what weight to give the testimony. *Dexheimer v. Industrial Comm'n*, 202 Ill. App. 3d 437, 442-43 (1990). Interpretation of medical testimony is particularly the function of the Commission. *Forsythe v. Industrial Comm'n*, 263 Ill. App. 3d 463, 469 (1994), quoting *A.O. Smith Corp. v. Industrial Comm'n*, 51 Ill. 2d 533, 536-37 (1972). Moreover, where the evidence is conflicting or where different inferences can be drawn, a court will not disregard permissible inferences by the Commission merely because it may have drawn other inferences from the evidence. *Plasters*, 246 Ill. App. 3d at 8.

Here, in the face of conflicting medical evidence, the Commission chose to rely on the opinions of Dr. Tuteur and Dr. Sugar, who opined that claimant did not have coal workers' pneumoconiosis, or at least significant pneumoconiosis, and that any pulmonary impairment was caused by smoking. The Commission expressly discounted Dr. Khan's opinion that claimant had developed pneumoconiosis as a result of coal mining, noting that Dr. Khan also testified that claimant's history of smoking could account for all of claimant's symptoms and that said symptoms are similar for chronic bronchitis, emphysema, and pneumoconiosis. Although the Commission did not expressly reject Dr. Houser's opinion, this conclusion is evident, in view of the result.

Claimant contends the Commission impermissibly ignored Dr. Houser's testimony, as evidenced by the Commission's decision to "assign[ ] greater weight, in this case, to the opinions of Dr. Tuteur and Dr. Sugar than to Dr. Khan." Although the Commission did not expressly refer to Dr. Houser's opinion in that statement, it clearly considered Dr. Houser's testimony. Earlier in the decision, the Commission gave a summation of Dr. Houser's opinion, emphasizing his testimony that claimant's condition could have resulted solely from smoking.

■ Viewing the evidence as a whole, the Commission found claimant does not have pneumoconiosis and that his condition and symptoms are causally related to smoking. This decision was "based on the more heavily weighed medical opinions" of Dr. Sugar and Dr. Tuteur, rather than the opinions of Dr. Khan and Dr. Houser. The resolution of such evidentiary conflicts is manifestly the province of the Commission, not the circuit court. Therefore, we find the circuit court erred in reversing the Commission's decision, which is supported by the record.

Claimant, without citation to authority, would have us hold that the Commission erred in rejecting the testimonies of Dr. Khan and

Dr. Houser because their credentials are more impressive, allegedly, than those of Dr. Sugar and Dr. Tuteur. We reject this argument on the ground that credibility determinations and the weight to be given the opinions of medical experts are particularly the domain of the Commission. In any event, our independent review of the curricula vitae of the experts shows their credentials are comparable.

Our research has uncovered one case where the court has overturned the Commission's decision based on the unbalanced testimony and background of experts. In *Osco Drug, Inc. v. Industrial Comm'n*, 36 Ill. 2d 361, 368 (1967), the supreme court noted that of the five doctors who testified, only one believed there might or could have been a causal relationship between the claimant's injury and her cancerous condition. The prevailing view among the others was that trauma of the type encountered by the claimant could not cause cancer. *Osco Drug, Inc.*, 36 Ill. 2d at 368. Moreover, the one doctor who found a possible causal relationship had very limited experience in cancer (he had taken a one-week course in cancer), he practiced two years at an apparently unspecialized clinic in Boston, and was a staff member of the only Rockford hospital having a recognized tumor clinic. *Osco Drug, Inc.*, 36 Ill. 2d at 363. In contrast, the other four doctors had extensive experience in cancer research, had taught at large universities and hospitals, and were well recognized in the field of cancer study. *Osco Drug, Inc.*, 36 Ill. 2d at 364-68.

The facts of the instant case are inapposite to those presented in *Osco Drug* in that there is no glaring inequality of the experts' backgrounds or experience. Moreover, the opinion of each expert, including claimant's own experts, supported the inference that claimant's condition of ill-being could have been caused entirely by his many years of smoking. Accordingly, we find no merit in claimant's contention that the Commission's decision and reliance on the opinions of Dr. Sugar and Dr. Tuteur were arbitrary and unreasonable.

## CONCLUSION

The resolution of factual matters is the province of the Commission, and its decision will not be reversed unless it is against the manifest weight of the evidence. In this case, the initial finding of the Commission of no causal relationship between claimant's employment and condition of ill-being is not against the manifest weight of the evidence. Therefore, the circuit court erred in setting it aside. Accordingly, the judgment of the circuit court of Williamson County is reversed, and the award confirmed by the circuit court of Franklin

County is vacated. The original decision of the Commission is reinstated.

Williamson County No. 94 MR 10—Reversed.

Franklin County No. 95 MR 28—Vacated.

Industrial Commission of January 5, 1994—Reinstated.

McCULLOUGH, P.J., and COLWELL and HOLDRIDGE, JJ., concur.

JUSTICE RARICK, concurring in part and dissenting in part:

I agree with the majority's conclusion that the circuit court erred in its interpretation and application of section 1(d) of the Act. Section 1(d) does not raise a presumption that a claimant suffers from pneumoconiosis. Rather, once it is shown that a claimant suffers from pneumoconiosis, section 1(d) raises a rebuttable presumption that such condition is causally connected to his employment. 820 ILCS 310/1(d) (West 1994). I must respectfully dissent, however, from the majority's conclusion that the Commission's original decision was not contrary to the manifest weight of the evidence. Reviewing Commissioner Jones' dissent, I find it to be very thorough and well reasoned, and I would adopt the conclusions therein.